CASCIOLI ET AL., APPELLANTS, *v.*
CENTRAL MUTUAL INSURANCE COMPANY ET AL., APPELLEES.

[Cite as Cascioli *v.* Central Mut. Ins. Co. (1983), 4 Ohio St. 3d 179.]

(No. 82-287—Decided April 27, 1983.)

180

Mr. *Clyde H. Collins,* for appellants.

Messrs. *Crabbe, Brown, Jones, Potts & Schmidt,* Mr. *Charles E. Brown* and Mr. *Steven B. Ayers,* for appellee Central Mutual Ins. Co.

Mr. *David L. Day,* for Beim & Grundstein et al.

*Per Curiam.* The issues presented in this case, as posited by appellants, relate to the scope of an insurance agent's apparent authority to bind an insurer pursuant to R.C. 3905.01.[2]

The rule of apparent authority, as set forth in 1 Restatement of the Law of Agency 2d (1958) 375, Section 159, is as follows:

"A disclosed or partially disclosed principal is subject to liability upon contracts made by an agent acting within his apparent authority if made in proper form and with the understanding that the apparent principal is a party. The rules as to the liability of a principal for authorized acts, are applicable to unauthorized acts which are apparently authorized."

---

[2] Appellants, in their merit brief, also set forth the following proposition of law:

"No insurance company authorized to transact the business of issuing automobile insurance policies in this state shall require an applicant or its agent to disclose any refusal or cancellation of automobile insurance, which disclosures are prohibited by Section 3937.37, Revised Code."

The issues underlying this proposition, were neither raised nor decided by the lower courts. This court held in *State, ex rel. Babcock,* v. *Perkins* (1956), 165 Ohio St. 185 [59 O.O. 258], in paragraph three of the syllabus:

"Where an appeal on questions of law is taken to the Supreme Court from the Court of Appeals, which latter court had jurisdiction of the subject matter of and the parties to the action, the Supreme Court will not consider or determine claimed errors which were not raised and preserved in the Court of Appeals."

No rule of law requires this court to review issues neither assigned as error nor reviewed by the court of appeals, and hence this court will not now entertain this issue.

This court's holding in *Miller* v. *Wick Bldg. Co.* (1950), 154 Ohio St. 93 [42 O.O. 169], paragraph two of the syllabus, is in accord:

"Even where one assuming to act as agent for a party in the making of a contract has no actual authority to so act, such party will be bound by the contract if such party has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract."

As these definitions indicate, the finding of apparent authority is predicated on the existence of a contract. Indeed, appellants' arguments presuppose that a valid insurance binder was in effect.

This underlying assumption, that a valid binder was in effect, however, finds no support in the record of this case. The evidence presented indicates, in striking contrast, that Beim & Grundstein never sought to bind Central Mutual and, thus, apparent authority was never invoked.

Close scrutiny of the application form submitted to Central Mutual by Beim & Grundstein in an attempt to procure insurance for Daniel Cascioli demonstrates that no binding coverage was ever in effect. The following provision appears on page one of the application form:

"Coverage is not bound unless indicated by ☑ below:

"☐　Coverage bound as per this application effective

_____

(Hour, Mo., Day and Year.)

"This binder shall expire 30 days from the effective date or it shall terminate (1) immediately on notice of cancellation by the named insured or the Company or (2) on its effective date if replaced by a policy as stated herein. * * *"

Clearly, then, in order to create a binder, the preparer of the application form must check the appropriate box and fill in the effective date. In the instant case, this box was not marked nor was a date supplied.

The memorandum which accompanied the application form further indicates that Beim & Grundstein never sought to bind Central Mutual. This memorandum, dated September 8, 1977, addressed to Central Mutual and signed (typewritten) by Jeanette LaScola, the Beim & Grundstein employee who handled the transaction and executed the application form, provided as follows:

"Please find attached application for the above named gen liability policy for quotation only. If it is possible to write with the two policy since we also have two fire policies, please advise as soon as possible.

"We have all information needed here in office if the information is not correct or insufficient information provided. * * *" [*sic.*]

Moreover, LaScola expressly testified that she did not issue a written binder.[3]

---

[3] "Q. Now, did you issue a written binder along with this application?
"A. No sir, there was no need to.

Since there was no attempt to create a binder, a contract was never created, and the issue of apparent authority to make the contract and thus the enforceability of such contract never became ripe. As the court of appeals so properly concluded, "[o]ut of the circumstances, it is somewhat difficult to relate the facts to the finding of apparent authority by the trial court. * * * In light of the failure of * * * Beim & Grundstein to indicate a binder on the application form and of the failure of any communication to * * * Daniel Cascioli, it is somewhat difficult to comprehend the binding contractual act that * * * Beim & Grundstein was found to have apparent authority to consummate."[4]

Appellants' arguments ignore the clear import of the decision by the court of appeals. Even though that court expressly stated that it "* * * express[es] no opinion as to what might have been the situation had there been an executed binder on the application even though * * * Daniel Cascioli was not informed thereof," appellants nonetheless request this court to address the question of the scope of Beim & Grundstein's apparent authority if a binder had been executed or an attempt to bind had been made.

---

"Q. Why is that?

"A. Because we had given the company lead time, twelve days I believe, twelve or thirteen days that they would get the application and have an opportunity to get the quote to us and issue the policy. If it was something that was undesirable, then they would have time to notify us in writing, which is standard practice; if the company declines a risk they notify you in writing.

"Q. My point being, you felt they would have substantial lead time?

"A. Yes.

"Q. So, therefore, you did not issue a written binder?

"A. Plus the fact that I did not want it bound as of 9/8, the date I signed the application. I wanted it bound as of 9/20.

"Q. Is that the reason you did not fill in the bottom of the application?

"A. Yes, sir.

"Q. If you were going to issue a written binder on this policy, or any other policy, would that be where you would do it, down at the bottom?

"A. Yes, I would mark that, issue the insured a binder so that they would have evidence of insurance.

"* * *

"Q. And at no time did you make an oral binder either for any coverage; did you?

"A. No, sir.

"Q. I mean, you never communicated anything to Mr. Cascioli or anyone else in the office verbally, saying I am going to bind?

"A. No, sir."

It is noted that Beim expressed a contrary intention, for he testified that he had intended that Central Mutual would be bound. The record is clear, however, that Beim never communicated this to Daniel Cascioli.

[4] Application of the principles of apparent authority to the instant factual setting is also suspect because Daniel Cascioli was unaware of the identity of Central Mutual and did not rely upon anything it may have done. As the court of appeals stated, in construing Comment B to Section 159 of 1 Restatement of the Law of Agency 2d, "[o]rdinarily, there can be no apparent authority unless the person dealing with the agent relies upon conduct of the principal causing such third person to believe that the agent is authorized to do the act involved."

This court, as did the appellate court, finds that the underlying facts simply do not support this proposition and, as such, will not render an opinion with regard thereto. Indeed, based on this record, anything this court might say with respect to the scope of an insurance agent's apparent authority would be largely advisory, and "* * * it is well-settled that this court does not indulge itself in advisory opinions." *Armco, Inc.* v. *Pub. Util. Comm.* (1982), 69 Ohio St. 2d 401, 406 [23 O.O.3d 361].

For the foregoing reasons, this court affirms the decision by the court of appeals that the trial court erred in finding apparent authority as a matter of law for Beim & Grundstein to bind Central Mutual.

*Judgment affirmed.*

W. Brown, Sweeney, Locher, Holmes and C. Brown, JJ., concur.

Celebrezze, C.J., and Kerns, J., dissent.

Kerns, J., of the Second Appellate District, sitting by assignment.

Kerns, J., dissenting. In the usual course of events, most automobile owners do not pick or choose any particular insurance company. On the contrary, most rely upon their local insurance agencies, but in perspective, a majority of this court has ruled today that anyone relying upon the coverage guaranteed by the general agent, who regularly services the policies and collects the premiums, does so at his peril.

Both the appellate court and this court have placed considerable emphasis upon the omission of a check mark on the insurance form submitted to Central Mutual by Beim & Grundstein, but this omission, if relevant at all to the relationship of the insurer and the insured, does not obscure the continuing agency relationship of Central Mutual Insurance Company and the Beim & Grundstein Insurance Agency.

In the present case, Central Mutual was, at the least, a partially disclosed principal as that term has been defined in Section 4(2) of the Restatement of Agency 2d (1958), at 17:

"If the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is a partially disclosed principal."

And as to partially disclosed principals, Section 159 of the Restatement of Agency 2d (1958), at 375, provides further:

"A disclosed or partially disclosed principal is subject to liability upon contracts made by an agent acting within his apparent authority if made in proper form and with the understanding that the apparent principal is a party. The rules as to the liability of a principal for authorized acts, are applicable to unauthorized acts which are apparently authorized."

Here, Central Mutual bases its defense essentially upon the alleged

unauthorized acts of Beim & Grundstein, but this position cannot be reconciled with the provisions of R.C. 3905.01, which expressly provide, among other things, that "[a]n insurance company shall be bound by the acts of the persons named in the license within his apparent authority as its agent."

If Central Mutual does, in fact, have a cause of action against Beim & Grundstein for negligence, the courts will still be open, but at this juncture, the court of common pleas properly ruled that the local agent had authority to bind the insurer to coverage.

CELEBREZZE, C.J., concurs in the foregoing dissenting opinion.