### Heritage Oldsmobile Cadillac v. Fifth Third Bank
*[Cite as 7 AOA 9]*

*Case No. C-890370*
*Hamilton County, (1st)*
*Decided October 10, 1990*

*N. Jeffrey Blankenship and James M. Kelly, Mechley, Robbins & Kelly Co., L.P.A., 832 Main Street, Cincinnati, Ohio 45202, for Plaintiff-Appellee.*

*Sylvan P. Reisenfeld, Reisenfeld & Associates, Auburn Barrister House, 2355 Auburn Avenue, Cincinnati, Ohio 45219, and Daniel M. Keefe, The Fifth Third Bank, 38 Fountain Square Plaza, Cincinnati, Ohio 45263, for Defendant-Appellant.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the briefs and the arguments of counsel.

Defendant-appellant Fifth Third Bank ("bank") presents on appeal a single assignment of error in which it challenges the entry of summary judgment for plaintiff-appellee Heritage Oldsmobile Cadillac ("Heritage") on Heritage's complaint to recover the purchase price of an automobile obtained from Heritage and leased by the bank to a third party.

The automobile over which the instant dispute arose was obtained in November 1987 from Heritage by Grand Auto, Inc. ("Grand Auto"). Grand Auto arranged for the automobile to be leased by the bank to one Robert Detmer pursuant to the authority conferred upon Grand Auto under a "Fifth Third Dealer Agreement" ("dealer agreement") executed by the bank and Grand Auto on October 18, 1984.

The dealer agreement contemplated an ongoing relationship between the bank and Grand Auto,¹ whereby Grand Auto, appointed under the agreement as an "authorized Fifth Third Leasing Plan Dealer," Plaintiff's Ex. 1, would obtain and sell to the bank motor vehicles for lease by the bank to third parties. The dealer agreement required Grand Auto, as the dealer, to assist a prospective lessee in preparing a lease application and a lease agreement, both on forms provided by the bank, and any other documentation that the bank might require and to deliver the completed paperwork to the bank for its consideration. The bank then could either approve or disapprove the proposed lease. If the bank approved the lease, Grand Auto would obtain the desired vehicle and, pursuant to a power of attorney granted by the bank to Grand Auto under the agreement, apply for a certificate of title for the vehicle in the bank's name. The bank would then pay Grand Auto an amount equal to the purchase price of the vehicle plus a "dealer reserve" upon delivery to the bank of the lease application, the lease agreement, the lessee's advance payments, the certificate of title, the manufacturer's invoice, evidence of the required insurance coverage, and, after the vehicle was delivered to the lessee, the delivery receipt. If Grand Auto failed to satisfy these requirements, the bank could assign to Grand Auto the bank's interest in the lease.

On November 10, 1987, Robert Detmer, with the assistance of Grand Auto, completed an application to lease from the bank a 1988 Cadillac. Grand Auto located the desired vehicle at Heritage. On November 11, the president of Grand Auto, James Clemons, contacted Bob O'Hara, Heritage's fleet manager, to negotiate the purchase price of the vehicle. O'Hara, in an affidavit accompanying Heritage's motion for summary judgment, averred that Clemons told him that "he was trying to arrange a lease for

the [bank] on a 1988 Cadillac *** to *** Robert Detmer," that he and Clemons "agreed that [the bank] would pay Heritage *** $22,455.14" for the car, that he "agreed to have the Ohio Certificate of Title prepared for [the bank], to be delivered upon receipt of payment for the car" and that, to his knowledge, the bank had not paid Heritage for the car. T.d. 15, Ex. B.

On the same day, Detmer executed the bank's form "Motor Vehicle Closed End Lease Agreement" ("lease agreement") and an agreement to provide insurance. The lease agreement designated the bank as the lessor and Grand Auto as "the arranger of this Lease and an additional lessor under the Federal Consumer Leasing Act." T.d. 14, Plaintiff's Ex. 4. Grand Auto executed a "Collateral Pledge Commitment," pursuant to which Grand Auto agreed to deliver and pledge to the bank the Cadillac as collateral for the lease indebtedness by December 2, 1987. On November 18, 1987, the bank approved payment of a draft in the amount of $24,332, which was drawn by and payable to Grand Auto against the bank's leasing account and deposited in Grand Auto's account. On November 20, the bank received an executed copy of the Detmer lease agreement.[2] On December 8, a certificate of title for the Cadillac was issued in the bank's name. Finally, on December 31, the bank paid Grand Auto $729.96 as a bonus for the Detmer lease.

At some point, the Cadillac was delivered to Detmer. On the ground that it has not been paid for the vehicle, Heritage has declined to deliver to the bank the certificate of title.[3]

Although it has not received the certificate of title, the bank has not exercised its option under the dealer agreement to assign to Grand Auto its interest in the lease.

In September 1988, Heritage brought an action against the bank seeking to recover the purchase price of the Cadillac. The bank responded with an answer substantially denying the allegations of the complaint, a counterclaim against Heritage seeking a declaration of the bank's ownership of the Cadillac, and a third-party complaint against Grand Auto for contribution and indemnification. Heritage responded to the bank's counterclaim with an answer; the third-party complaint served against Grand Auto was returned unclaimed.

Following a period for discovery, Heritage moved for summary judgment. On October 23, 1989, the trial court, without elaboration, entered summary judgment for Heritage on its complaint and on the bank's counterclaim, and this appeal ensued.

Pursuant to Civ. R. 56, a party seeking to recover upon a claim may move for summary judgment in his favor on all or any part of the claim. Civ. R. 56(A). A motion for summary judgment may be granted if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleading and supporting evidentiary material in a light most favorable to the party opposing the motion, determines:

"(1) that no genuine issue of material fact remains to be litigated;

"(2) that the moving party is entitled to judgment as a matter of law; and

"(3) that it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion." *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 364 N.E.2d 267; Civ. R. 56(C).

In support of the trial court's entry of summary judgment in its favor, Heritage asserts that Grand Auto, in contracting with Heritage for the purchase of the Cadillac, acted as the bank's actual or apparent agent or, in the alternative, that the bank and Grand Auto acted as joint venturers, thus giving rise to a conclusive presumption of a principal-agent relationship. None of the theories advanced by Heritage supports the entry of summary judgment for Heritage on its complaint.

When one assuming to act as an agent undertakes to make a contract for a party, that party is bound by the contract only if the one assuming to act as an agent had authority to make a contract for that party. *Miller v. Wick Bldg. Co.* (1950), 154 Ohio St. 93, 93 N.E. 2d 467. The relationship of principal to agent may arise either by express or implied agreement of the principal and agent or by apparent authority or estoppel. *Irving Leasing Corp. v. M & R Tire Co.* (1984), 16 Ohio App. 3d 191, 475 N.E.2d 127; *Levin v. Nielsen* (1973): "37 Ohio App. 2d 29, 306 N.E.2d 173."

The relationship between the bank and Grand Auto was governed by an express agreement, and the terms of that relation-ship are set forth in the dealer agreement. Heritage's fleet manager, Bob O'Hara, averred in his affidavit that he and Grand Auto's president, James Clemons, "agreed that [the bank] would pay Heritage *** $22,455.14" for the Cadillac to be leased to Detmer. T.d. 15, Ex. B. The dealer

agreement did not, however, authorize Grand Auto to tell Heritage to look to the bank for payment for the vehicle. To the contrary, pursuant to the terms of the dealer agreement, the bank was to purchase the vehicle to be leased to any third party from Grand Auto. The dealer agreement also expressly provided that, "[w]hen acting under this Agreement, Dealer shall be deemed an independent contractor and not an agent of Bank." T.d. 14, Plaintiff's Ex. 1. Therefore, the evidence before us, viewed most strongly in favor of the bank, does not support a conclusive finding that Grand Auto had express authority to act in an agency capacity to bind the bank to a contract with Heritage to purchase the Cadillac to be leased to Detmer.

Under the doctrines of agency by apparent authority or agency. by estoppel, contractual provisions limiting the authority of an agent or denying a principal-agent relationship, if unknown to a third party, will not defeat a finding of a principal-agent relationship as to that third party. *Agosto v. Leisure World Travel, Inc.* (1973), 36 Ohio App. 2d 213, 304 N.E.2d 910. Even when one assuming to act as an agent has 'no actual authority to make a contract for a party, that party will be bound on the contract under the doctrines of agency by apparent authority or agency by estoppel if that party, by words or conduct, has affirmatively, intentionally or by lack of ordinary care caused the other party to the contract to believe that the one assuming to act as an agent had the necessary authority to make the contract. *Cascioli v. Central Mut. Ins. Co.* (1983), 4 Ohio St. 3d 179, 448 N.E. 2d 126; *Ammerman v. Avis Rent A Car Sys., Inc.* (1982), 7 Ohio App. 3d 338, 455 N.E.2d 1041 (citing *Miller, supra*; *Logsdon v. ABCO Constr. Co.* [1956], 103 Ohio App. 233, 141 N.E.2d 216).

The doctrines of agency by apparent authority and agency by estoppel, as recognized in Ohio, are equivalent and share the same elements. *Whitlow v. Good Samaritan Hosp.* (1987), 42 Ohio App. 3d 74, 536 N.E. 2d 659; *Ammerman, supra*; *Logsdon, supra*. To establish such an agency, the party asserting the agency bears the burden of proving:

(1) that the principal held the agent out to the public as possessing sufficient authority to act on his behalf; and

(2) that the person dealing with the agent knew these facts and, acting in good faith, had reason to believe and did believe that the agent possessed the necessary authority. *Craig Wrecking Co. v. S G. Loewendick & Sons, Inc.* (1987), 38 Ohio App. 3d 79, 526 N.E. 2d 321; *Irving Leasing Corp.1 supra*; *Logsdon, supra*. The question of whether the elements establishing an agency by apparent authority or agency by estoppel have been proven is one of fact. *Stratso v. Song* (1984), 17 Ohio App. 3d 39, 477 N.E. 2d 1176; *Agosto, supra*.

Heritage's assertion of induced reliance on Grand Auto's apparent authority to bind the bank on a contract to purchase the Cadillac to be leased by Detmer is premised in part on the provisions of the dealer agreement under which the bank appointed Grand Auto as "an authorized Fifth Third Leasing Plan Dealer" and authorized Grand Auto to advertise that appointment with advertising provided or approved by the bank., T.d. 14, Plaintiff's Ex. 1. When a person by license permits another to use his business or trade name, the public is entitled to assume that a transaction undertaken with one using that business or trade name is a transaction with the person whose business or trade name is being used. *Agosto, supra*. There is nothing, however, in the record before us to show that, at the time that Grand Auto committed the bank to pay for the Cadillac, Heritage knew of the dealer agreement between the bank and Grand Auto or of Grand Auto's appointment thereunder as "an authorized Fifth Third Leasing Plan Dealer," or that the bank ever provided or approved advertising designating Grand Auto as such.[4]

Heritage's reliance on the affidavit testimony of its fleet manager, Bob O'Hara, to bind the bank under a theory of agency by apparent authority or agency by estoppel is equally misplaced. O'Hara averred that Grand Auto's president, James Clemons, stated that "he was trying to arrange a lease for the [bank] on a 1988 Cadillac *** to *** Robert Detmer," and that he and Clemons "agreed that [the bank] would pay Heritage *** $22,455.14" for the car. T.d. 15, Ex. B. However, a finding of agency by apparent authority or agency by estoppel must be based upon words or conduct by the principal. See *Cascioli, supra*; *Ammerman, supra*. The assurances of one who assumes to act as an agent of his authority to bind another are not, standing alone, sufficient to prove his agency. *Rockenfield & Assocs. v. Young* (June 14, 1989), Hamilton App. No. C-880229, unreported. The record discloses no words or conduct on the part of the bank upon which Heritage can be said to have reasonably relied and, therefore, does not

support a conclusive finding that Grand Auto, in contracting for the purchase of the Cadillac, acted as the bank's agent by apparent authority.

The alternative theory offered by Heritage in support of the entry of summary judgment in its favor, that the bank and Grand Auto acted as joint venturers, is equally feckless. The Ohio Supreme Court in *Ford v. McCue* (1955), 163 Ohio St. 498, 127 N.E. 2d 209, held that:

"A joint business adventure is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure."

*Id.*, paragraph one of the syllabus; see, also, *Silver Oil Co., Inc. v. Limbach* (1989), 44 Ohio St: 3d 120, 541 N.E.2d 612; *Strickland v. Jordan* (Sept. 23, 1981), Hamilton App. No. C800646, unreported. The parties must, by express or implied contract, manifest their intent to be joint venturers. As distinguished from a partnership, which relates to a continuing business, a joint venture relates to a single enterprise. *Silver Oil Co., Inc, supra; Ford, supra.* The parties to a joint venture function as both principal and agent to each other, with each party possessing an equal right or equal authority to direct and govern the movements and conduct of the other. *Id.* The parties to a joint venture must also divide the profits and losses. *Id.* The question of whether a joint venture exists is one of fact. *Fleischman v. Magro* (Aug. 30, 1976), Hamilton App. Nos. C-75395, C-75399, unreported.

The dealer agreement between the bank and Grand Auto, which sets forth the terms of their relationship, does not manifest their intent to engage in a joint venture. The dealer agreement contemplated an ongoing relationship between the parties rather than a joint effort in a single enterprise. Under the agreement, Grand Auto received for its efforts a dealer reserve over the purchase price of the vehicle and, in some instances, a bonus, whereas the bank anticipated a gain from the lease of the vehicle to a third party. Therefore, Grand Auto and the bank did not share in the profits or losses of the resulting third-party lease. The bank and Grand Auto agreed under the dealer agreement to contribute their respective efforts, money, skill and knowledge to the enterprise. However, the parties cannot be said to possess under the agreement the right or authority to direct the movements and conduct of the other when the bank, with the unfettered authority to approve or disapprove a proposed lease, possessed absolute control over the ultimate objective of the dealer agreement.

The liabilities of joint venturers are predicated on a theory of mutual agency, and evidence of mere joint contribution falls short of the requisite proof of mutuality of control. *Hock v. Goller* (July 22, 1984), Hamilton App. No. C-73556, unreported. The evidence before us demonstrates joint contribution but not mutuality of control and, therefore, does not support a conclusive finding that the bank and Grand Auto acted as joint venturers.

Having thus determined that none of the theories advanced by Heritage supports the entry of summary judgment for Heritage on its complaint, we sustain the bank's sole assignment of error, reverse the judgment entered below, and remand the matter for further proceedings consistent with law and this decision.

UTZ, P.J., DOAN and GORMAN, J.J.

---

[1] The dealer agreement was for an indefinite term and was terminable by either party upon three days' written notice.

[2] The dealer agreement prohibited Grand Auto, as the dealer, from executing a lease agreement on behalf of the bank. The lease agreement, however, expressly authorized Grand 'Auto, as the entity arranging the lease, to execute the lease agreement on the bank's behalf. The signature for the bank on the Detmer lease agreement is illegible, and from the evidence before us, it is unclear whether the lease agreement was fully executed when received by the bank on November 20, i.e., whether Grand Auto executed the lease agreement on the bank's behalf, or whether the bank executed the lease agreement when it was received.

It is also noteworthy that, although the dealer agreement provided for payment to the dealer after receipt of, inter alia, the lease agreement and the certificate of title, the bank paid Grand Auto two days before it received the Detmer lease agreement, and Heritage retains possession of the certificate of title to the Cadillac leased to Detmer.

[3] Heritage alleged in its complaint that it has not been paid for the Cadillac. The bank asserted in its counterclaim against Heritage that a draft for the purchase price of the Cadillac was submitted by Grand Auto and accepted by Heritage but was returned unpaid to Heritage. Heritage in its answer to the bank's counterclaim denied the allegation, and the bank has submitted no evidence in support thereof.

[4] The terms of the dealer agreement between the bank and Grand Auto should be familiar to Heritage, because the bank had an identical dealer agreement with Heritage, with the distinction that Heritage functioned as a "franchise dealer" under its agreement with the bank, buying directly from the manufacturer, while Grand Auto functioned as a "leasing dealer." The record is devoid of evidence to show that Heritage knew of the bank-Grand Auto dealer agreement, however, and if Heritage did know of the agreement and its terms, it must also be charged with knowledge of the agency disclaimer and the limitations on Grand Auto's authority contained therein.