CLEVELAND BUILDERS SUPPLY COMPANY, Appellant,

v.

FARMERS INSURANCE GROUP OF COMPANIES et al., Appellees.

[Cite as *Cleveland Builders Supply Co. v. Farmers Ins. Group of Cos.* (1995), 102 Ohio App.3d 708.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67090.

Decided May 8, 1995.

---

*John D. Wheeler,* for appellant.

*Crabbe, Brown, Jones, Potts & Schmidt, Gilbert J. Gradisar* and *John C. Albert; Porter, Wright, Morris & Arthur, Margaret M. Koesel* and *Hugh E. McKay,* for appellees.

---

PATTON, Chief Judge.

The Cleveland Builders Supply Company ("CBS") brought this action against Farmers Insurance Group of Companies ("Farmers") and insurance agent Glen Silverhart. CBS claimed Farmers had wrongfully denied coverage under an umbrella policy the agent had issued. It sought a declaration of its rights under

the policy and damages for various tort claims and breach of contract. Both defendants denied the existence of a contract for insurance. The trial court granted summary judgment to each defendant and this appeal followed.

CBS is engaged in the manufacture and sale of ready-mix concrete. Prior to 1987, it purchased from another insurance company primary insurance coverage containing a $1,000,000 limit, and an umbrella policy containing a $5,000,000 limit. As that coverage came due to expire in late 1986, CBS sought to renew coverage.

In the fall of 1986, CBS met with Silverhart and, after preliminary discussions, asked him to prepare bids for primary and umbrella insurance coverage similar to its then-current coverage. Silverhart is a "captive" agent for Farmers, meaning he cannot submit insurance applications to other brokers or carriers unless permitted to do so by Farmers. After preparing an initial proposal for primary coverage in late December 1986, Silverhart, by letter dated January 2, 1987, submitted a proposal for primary coverage of $500,000 and umbrella coverage of $5,000,000. The proposal quoted umbrella coverage at a price of $23,400 and contained language stating umbrella coverage "cannot be bound until underlying coverage is approved."

On January 14, 1987, CBS forwarded to Silverhart information relating to its exposure to asbestos lawsuits. On January 29, 1987, Farmers authorized Silverhart to bind the primary policy. Farmers did not authorize a binder on the umbrella policy, although Silverhart did tell CBS it had been his experience that Farmers always approved the umbrella policy once the primary policy had been approved.

CBS signed the application for the primary policy on January 29, 1987, and requested a commercial umbrella policy. Farmers approved the primary policy in late March or early April 1987 and began to review CBS's application for the umbrella policy. Farmers' reinsurer said it would not provide umbrella coverage because of CBS's exposure to asbestos litigation. As a result, Farmers refused to quote a price for the umbrella policy and on April 14, 1987, authorized Silverhart to pursue other sources for umbrella coverage. Silverhart contacted thirty other insurers who all refused to provide coverage because of CBS's asbestos risk. Silverhart did manage to present a proposal for insurance, but CBS rejected it due to cost. In January 1988, CBS informed Silverhart it had accepted an insurance binder from another insurance company and asked Silverhart to cancel its primary policy with Farmers.

CBS brought this action against Farmers and Silverhart alleging breach of contract, bad faith, negligence, fraudulent misrepresentation, fraudulent inducement and breach of fiduciary duty. It also sought a declaration of its rights under the contract and requested specific performance as a remedy for the alleged breach. In their separate motions for summary judgment, defendants

maintained (1) there was no contract, (2) even if there was a contract, CBS failed to suffer damages resulting from a breach, and (3) CBS's buyout deprived it of standing to bring its claims. The court granted the defendants' motions for summary judgment without opinion.

I

In its first assignment of error, CBS maintains it presented sufficient evidence to establish a genuine issue of material fact as to the existence of a contract between the parties. CBS claims a contract was formed based upon material representations by Silverhart. In the absence of such representations, it urges us to find a contract implied in fact.

A contract is a promise or a set of promises, the breach of which the law provides a remedy, or the performance of which the law in some way recognizes a duty. *Ford v. Tandy Transp. Inc.* (1993), 86 Ohio App.3d 364, 380, 620 N.E.2d 996, 1006. In order for a party to be bound to a contract, the party must consent to its terms, the contract must be certain and definite and there must be a meeting of the minds of both parties. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134, 137.

Having reviewed the facts in a light most favorable to CBS, we conclude that there is no genuine issue of material fact as to the existence of a contract for umbrella coverage. Documents submitted in conjunction with Farmers' motion for summary judgment clearly demonstrate Farmers' intent not to be bound to provide umbrella coverage until certain prerequisites had been satisfied. The application form for CBS's request for a commercial liability quotation contained the following statement: "Completion of this form does not bind coverage. Applicant's acceptance of Company's quotation is required before applicant may be bound and policy issued." Farmers did not approve umbrella coverage, nor for that matter did it forward to CBS any offer for such coverage. By its own terms, Farmers would not agree to provide any umbrella coverage until it issued a quotation. The undisputed facts show that Farmers made no such quotation. Consequently, CBS and Farmers did not have a meeting of the minds.

CBS argues that Farmers could be bound to issue the umbrella coverage based upon representations made by Silverhart. CBS maintains that Silverhart had apparent authority to represent Farmers; therefore, his statements concerning coverage may be imputed to Farmers.

The parties agree that Silverhart is a captive agent for Farmers and is not authorized to submit insurance applications to other brokers or carriers unless the applicant does not meet Farmers' requirements or Farmers rejects the

applicant. See, also, R.C. 3929.27. In *Miller v. Wick Bldg. Co.* (1950), 154 Ohio St. 93, 42 O.O. 169, 93 N.E.2d 467, paragraph two of the syllabus, states:

"Even where one assuming to act as agent for a party in the making of a contract has no actual authority to so act, such party will be bound by the contract if such party has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract."

█ A finding of apparent authority is predicated on the existence of a contract. *Cascioli v. Cent. Mut. Ins. Co.* (1983), 4 Ohio St.3d 179, 181, 4 OBR 457, 459, 448 N.E.2d 126, 128. Silverhart told CBS that Farmers did not write the policy (the reinsurer did) and he had no authority to bind umbrella coverage. In fact, his proposal to CBS stated, "[T]his is merely a propsal [*sic*] and is not a policy of insurance * * *. [T]he company reserves the right to accept, reject or modify this proposal after investigation, review of the application, and review of all other underwiting [*sic*] information."

CBS's argument that Silverhart's statement that umbrella coverage existed is taken out of context. Although Silverhart did tell CBS it was his experience that once Farmers approved primary coverage umbrella coverage would generally follow, he also told CBS he had no authority to bind a contract. The language of the application for umbrella coverage reinforced Silverhart's inability to bind Farmers since it clearly stated that completion of the application form did not bind coverage. As stated in *Cascioli*, "[s]ince there was no attempt to create a binder, a contract was never created, and the issue of apparent authority to make the contract and thus the enforceability of such contract never became ripe." *Id.*, 4 Ohio St.3d at 182, 4 OBR at 460, 448 N.E.2d at 129. The facts unambiguously show Silverhart did not attempt to create a binder because he did not have the authority to do so.

█ CBS argues in the alternative that principles of promissory estoppel[1] apply because it relied to its detriment on Silverhart's representations that the umbrella policy would be issued as soon as Farmers approved the primary policy.

█ In order to establish a claim of promissory estoppel, the plaintiff must show a promise, clear and unambiguous in its terms, reliance by the party to whom the promise is made, the reliance must be reasonable and foreseeable, and

---

1. In its assignment of error and discussion, CBS refers to the legal basis for this argument as "implied contract," although the substance of its argument clearly relates to promissory estoppel since it refers to "inducement" and "reliance." Neither inducement nor reliance are applicable to implied contracts. An implied contract has the same legal effect as an express contract, the only difference being the manner of manifesting assent. See *Gargasz v. Nordson Corp.* (1991), 68 Ohio App.3d 149, 587 N.E.2d 475.

the party claiming estoppel must be injured by the reliance. *Stull v. Combustion Engineering, Inc.* (1991), 72 Ohio App.3d 553, 557, 595 N.E.2d 504, 507.

CBS maintains Silverhart promised umbrella coverage would follow as soon as Farmers approved the primary coverage. The undisputed facts also show that Silverhart emphasized that he had no authority to bind the policy since Farmers' reinsurer would make that decision. While Silverhart intimated that umbrella coverage would likely be approved based on his past experience, the facts do not show this to be a clear and unambiguous promise. Certainly, Silverhart's representations were tempered by the disclaimers appearing on the application for umbrella coverage. As a matter of law, CBS has failed to satisfy the elements necessary to show promissory estoppel.

Accordingly, Farmers did not contract with CBS to provide umbrella coverage. The first assignment of error is overruled.

## II

█ The second assignment of error is that the court erred by granting summary judgment where there is sufficient evidence to create an issue of material fact regarding the injury or damages suffered by CBS as a result of Farmers' and Silverhart's failure to provide the umbrella policy.[2] In their motions for summary judgment, both defendants argued that CBS had no exposure to claims in excess of the primary policy limits. They further argued that if damages did exist, CBS lacked standing to bring this action because it had been bought out by another company that succeeded to CBS's rights and liabilities.

█ Regardless of whether the action sounds in tort or contract, a plaintiff seeking to recover compensatory damages must prove an injury and resulting damage. *Hanson v. Kynast* (1986), 24 Ohio St.3d 171, 24 OBR 403, 494 N.E.2d 1091 (negligence); *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 180–181, 472 N.E.2d 707, 710 (negligence); *Pietz v. Toledo Trust Co.* (1989), 63 Ohio App.3d 17, 22, 577 N.E.2d 1118, 1121–1122; *Munoz v. Flower Hosp.* (1985), 30 Ohio App.3d 162, 168, 30 OBR 303, 309, 507 N.E.2d 360, 366–367 (contract). It is uncertainty as to the existence of damages, not uncertainty as to the amount, which precludes recovery. *Pietz, supra.*

In its opposition to the motions for summary judgment, CBS submitted the affidavit of its president, who averred CBS had paid a $1,000,000 settlement to

---

2. Although we found in Part I, *supra,* that the parties did not enter into a contract for an umbrella policy, the issue of damages is relevant to the remaining tort claims filed against both defendants.

the plaintiffs in an action filed in federal court titled *May v. Cleveland Builders Supply Co.* (E.D.Mo.), No. 88–036–C–5. Following settlement, CBS made a claim for indemnity against Farmers, as well as against other insurance carriers. In addition to the Missouri settlement, the evidentiary materials demonstrate over thirty other asbestos-related suits in which CBS is named as a defendant. The affidavit also states there are currently twenty personal injury or wrongful death actions pending against it in various state and federal courts. One of those suits demands $5,500,000 in damages.

An umbrella policy covers only those damages in excess of the coverage provided by all other applicable insurance policies. *Wurth v. Ideal Mut. Ins. Co.* (1987), 34 Ohio App.3d 325, 518 N.E.2d 607. In an action for breach of a contract to procure insurance, the measure of damages is the amount the insurer would have owed under the terms of the proposed contract. *Stuart v. Natl. Indemn. Co.* (1982), 7 Ohio App.3d 63, 69, 7 OBR 76, 81–82, 454 N.E.2d 158, 165. Accordingly, if CBS is to recover for breach of contract, it must show with reasonable certainty it has been damaged in an amount exceeding the primary policy limits.

Farmers submitted the affidavit of Kent McGregor,[3] its manager of environmental claims, who oversees the handling of asbestos claims. He averred there are thirty-eight open asbestos cases against CBS. Thirty-seven of those cases are reserved at $2,500 each, with the remaining case expected to settle in the $60,000 to $65,000 range. Additionally, Farmers' contribution percentage to those claims has been and is expected to continue to be in the range of 2.9 percent to 3.9 percent of the total settlement as agreed among all the carriers several years ago. Consequently, CBS would have to face exposure to aggregate claims in the range of $12,820,512 to $17,241,379 in order to exceed the $500,000 general policy limit ($500,000 divided by .029 and .039, respectively).

We conclude the trial court did not err by granting summary judgment since the evidentiary materials demonstrate, as a matter of law, that CBS has not incurred liability in excess of the general policy limits. The only response CBS could muster on this point was a report by an insurance consultant, who stated:

"Given the current state of asbestos litigation, it would be reasonable to expect that the primary limit of $500,000 could be exhausted, especially if circumstances

---

3. CBS's sixth assignment of error complains the court erred by considering McGregor's affidavit even though Farmers failed to comply with Loc.R. 21.1 of the Court of Common Pleas of Cuyahoga County and submit a copy of the affidavit to CBS. Loc.R. 21.1 is inapplicable because it applies to disclosure of *trial* witnesses. In any event, we find the court did not abuse its discretion in considering McGregor's affidavit since CBS did depose McGregor and its own expert reviewed McGregor's affidavit before preparing his expert report for CBS. Hence, CBS has failed to show prejudice.

were such that the Farmers Group coverage is the only insurance available to respond to a particular claim."

 This response is speculative and uncertain. Where prospective damages are claimed, they are limited to those reasonably certain to result from the injury. *Pennsylvania Co. v. Files* (1901), 65 Ohio St. 403, 62 N.E. 1047, paragraph two of the syllabus; *Powell v. Montgomery* (1971), 27 Ohio App.2d 112, 116, 56 O.O.2d 279, 281–282, 272 N.E.2d 906, 910. Nothing in CBS's expert report can be construed to state that it will suffer future damages with reasonable certainty. Although the expert did preface the report with a statement declaring that his opinions were based on a reasonable degree of certainty, he did not state that *damages* were reasonably certain to occur. He could only state that the primary limit "could be exhausted." This does not rise to the level of certainty required by the law.

In order for a party to overcome a motion for summary judgment, it must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. Seven years after the date on which the umbrella coverage was alleged to have been bound, CBS has not come close to exhausting the primary policy limits. Finally, although CBS claimed it settled the *May* litigation for $1,000,000, it did not submit any evidence showing that the settlement figure exceeded the primary policy limits. Indeed, it appears that CBS's pro rata share of the settlement amount is far below the policy limits.

Because CBS presented only the possibility of future damages resulting from claims in excess of the primary policy limits, we find as a matter of law that the court did not err by granting summary judgment on this issue.

Our disposition of the above assignments of error effectively moots consideration of the remaining assignments. See App.R. 12(A)(1)(c). Accordingly, the assignments of error are overruled.

*Judgment affirmed.*

HARPER and DYKE, JJ., concur.