**In re Hubert Dorel PLANKENHORN, Debtor.**

**Bankruptcy No. 97–35143.**

United States Bankruptcy Court,
N.D. Ohio.

Aug. 10, 1998.

William L. Swope, Findlay, OH, for Debtor.

Anthony B. DiSalle, Toledo, OH, trustee.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after Hearing on Debtor's Objection to Proof of Claim of Larry Browneller. At the trial, the parties were afforded the opportunity to present evidence and make arguments they wished the Court to consider in reaching its decision. This Court has reviewed the evidence presented at trial, the arguments of counsel, and the entire record in the case. Based upon this review, and for the following reasons, this Court will sustain Debtor's objection.

### FACTS

Debtor was and remains a semi-retired mechanic who undertakes the repair and restoration of classic and antique vehicles in his spare time. In 1990, Debtor was asked by Larry Browneller to restore a 1963 Chevrolet Impala convertible. Because the convertible was in less than good condition, Mr. Browneller also supplied three other 1963 Impala's, also in poor condition, for parts. After examining the convertible, the Debtor told Mr. Browneller that the Impala convertible was not restorable. The parties then decided that Debtor would use a hard-top Impala as the base car, and make it into a convertible. Though the parties appear to have

understood that the restored vehicle would never be a "show car," in that it would not have all matching identification numbers on the various parts, Mr. Browneller nevertheless insists that he told Debtor he wanted a "damn good job". The arrangement between the parties was that Mr. Browneller would make payments to Debtor up front for materials and labor, often for a specified portion of the project. The Debtor used the many parts specifically requested and provided by Mr. Browneller. Debtor would also purchase less rare parts and other materials with the money provided by Mr. Browneller. Debtor testified that the amounts he charged for labor equated to approximately Ten Dollars ($10.00) per hour. Mr Browneller does not contest the fact that the rate charged by Debtor was well below the market rate for similar work.

Thereafter, Debtor did what is uncontested to be a considerable amount of work over the following six years. Work was sometimes sporadic, either because of Debtor's schedule, or on occasion on account of Mr. Browneller's need to tender further monies as work progressed. From time to time Mr. Browneller would stop by and check on the work in progress. Mr. Browneller owns a number of classic or antique cars, and is at least familiar with auto restoration. He does not appear to have had any complaints about the quality of Debtor's work during this time, or about the speed of the progress. After the body was substantially completed, Debtor had the car painted by a subcontractor. Mr. Browneller testified that he is satisfied with the quality of the paint job. At trial, Mr. Browneller produced copies of checks he paid to Debtor over the years which total Ten Thousand Nine Hundred Two Dollars ($10,902.00).

When Mr. Browneller came to pick the car up, he appears to have been satisfied with the quality and quantity of the work. Then, approximately one week after the Mr. Browneller took the car home, he began to voice complaints about various aspects of the car. Mr. Browneller's biggest complaint pertains to what he characterizes as "waves" in the paint, ostensibly due to an uneven surface on the body. Mr. Browneller acknowledges that he looked at the car before it was painted,

and after it was painted but before he picked it up, and did not voice any concerns. At trial, Mr. Browneller made various other complaints as to miscellaneous other shortcomings in the restoration, such as the alignment of the steering wheel, the fact that the neutral transmission switch was not hooked up, the installation of air conditioning, and the fit of the driver's side door. As to some of these matters, it appears that Mr. Browneller himself was the cause of the problem, in that he was to supply parts to Debtor which he never furnished (such as with the transmission switch and the air conditioning). As to the other complaints, Mr. Browneller had ample opportunity to discover these other defects while the work was in progress, yet made no complaint to Debtor. It appears that these matters only became an issue after he noticed the waves in the paint. As to these other complaints, this Court finds as a factual matter that there was simply no disagreement between the parties to support a breach of contract claim.

Debtor does not disagree that there are indeed waves in the paint. Rather, he explains that the vehicles he was working with where in such condition that it would be impossible to totally alleviate the problem without resorting to an impractical use of "plastic" (also known as "bondo" or "bodyfiller"), which would soon crack and break. He testified that it was his understanding that he was to make the car look presentable, which it is, and that Mr. Browneller understood that there would be no way to bring this car up to show quality. At trial, Mr. Browneller presented various pictures of the vehicle, which do not reveal any glaring shortcomings, at least to the untrained eye.

Debtor has now filed a Chapter 13 petition. Mr. Browneller has filed a claim in the case for Seven Thousand Dollars ($7,000.00), which he claims is the amount a typical body shop would charge to correct the problems he has alleged.

## LAW

The Bankruptcy Code, 11 U.S.C. § 101, et al., provides in pertinent part:

§ 502. **Allowance of claims or interests**

(a) A claim or interest, proof of which is filed under section 501 if this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsection (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow the claim in lawful currency of the United States in such amount, except to the extent that ...

### DISCUSSION

The issue before this Court is whether or to what extent Mr. Browneller's claim for Seven Thousand Dollars ($7,000.00) should be allowed per § 502(b) of the Bankruptcy Code. The allowance or disallowance of claims against the estate are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B). Thus, this is a core proceeding.

■ Mr. Browneller argues that Debtor should be found liable for either breach of contract or negligence. Regarding the former:

A contract is a promise or set of promises, the breach of which the law provides a remedy, or the performance of which the law in some way recognizes as a duty. *Ford v. Tandy Transp. Inc.* (1993), 86 Ohio App.3d 364, 380, 620 N.E.2d 996, 1006. In order for a party to be bound to a contract, the party must consent to its terms, the contract must be certain and definite and there must be a meeting of the minds of both parties. *Episcopal Retirement Homes, Inc. v. Ohio Department of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134, 137.

*Cleveland Builders Supply Co. v. Farmers Insurance Group of Cos.*, 102 Ohio App.3d 708, 712, 657 N.E.2d 851 (1995).

■ In this case, there was clearly was a misunderstanding between the parties regarding the quality of work which could and would be obtained. Once the Debtor told the Mr. Browneller that his work would not yield a car of "show" quality, he believed the Creditor merely wanted a presentable car. Mr. Browneller, on the other hand, thought that his request for a "damn good job" would yield a car that would be more competitive at the small amateur car shows he frequents. The issue is clearly a material term of the oral contract between the parties upon which there was no shared understanding. Thus, this Court does not find the Debtor in breach of term of the contract which did not exist. As to Mr. Browneller's other complaints, there is simply unconvincing evidence which supports a breach of contract claim.

■ Mr. Browneller's claim for negligence is simply misplaced in this case. "When the promissee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfill the term of the bargain arises only from the contract." *Battista v. Lebanon Trotting Association*, 538 F.2d 111, 117 (6th Cir.1976), applying Ohio law. See also *Chemtrol Adhesives, Inc. v. Amer. Manf. Mutual Ins. Co.*, 42 Ohio St.3d 40, 44, 537 N.E.2d 624, 630 (1989), *Inglis v. American Motors Corp.*, 3 Ohio St.2d 132, 209 N.E.2d 583 (1965), and *Cincinnati Gas & Electric Co. v. General Electric Co.*, 656 F.Supp. 49, 60 (1986). Mr. Browneller alleges no loss in this case other than loss of the bargain, so his claim under negligence fails.

For the foregoing reasons, this Court finds that Debtor has sustained his burden to show that Mr. Browneller does not have a valid claim in this case. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that Debtor's Objection to Proof of Claim of Larry Browneller be, and is hereby, *SUSTAINED*, and that the claim of Mr. Browneller is hereby *DISALLOWED*.