[Cite as *State v. Woods*, 2014-Ohio-2375.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| SAMUEL DARRELL WOODS | : | Case No. 2013CA00176 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 2013CR0399



JUDGMENT:                         Affirmed



DATE OF JUDGMENT:                 June 2, 2014



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                           WAYNE E. GRAHAM, JR.
Prosecuting Attorney                      4450 Belden Village Street, NW
                                          Suite 703
By: RONALD MARK CALDWELL                  Canton, OH  44718
Assistant Prosecuting Attorney
110 Central Plaza South
Suite 510
Canton, OH  44702

*Farmer, P.J.*

{¶1}  On April 23, 2013, the Stark County Grand jury indicted appellant, Samuel Woods, on one count of murder in violation of R.C. 2903.02 and one count of felonious assault in violation of R.C. 2903.11, both with firearm and repeat violent offender specifications, and one count of having weapons while under disability in violation of R.C. 2923.13 and one count of illegal possession of a firearm in a liquor permit premises in violation of R.C. 2923.121.  Said charges arose from a shooting at the Friendly Corner Inn, a bar in Canton, and the subsequent death of Roosevelt Newell.

{¶2}  The illegal possession of a firearm count was subsequently dismissed, and the weapons while under disability count was tried to the bench.  A jury trial commenced on July 29, 2013.  The trial court found appellant guilty of the weapons count, and the jury found appellant guilty of the remaining counts.  By judgment entry filed August 2, 2013, the trial court sentenced appellant to an aggregate term of thirty-one years in prison.

{¶3}  Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶4}  "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

II

{¶5}  "THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING GRUESOME PHOTOS WHICH WERE INFLAMMATORY AND HIGHLY PREJUDICIAL."

III

{¶6}   "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED TESTIMONY UNDER THE EXCITED UTTERANCE EXCEPTION TO HEARSAY."

I

{¶7}   Appellant claims his convictions were against the sufficiency and manifest weight of the evidence, challenging the credibility of the eyewitness testimony, the lack of physical evidence linking him to the crimes, and the failure of the coroner to establish beyond a reasonable doubt the cause of the victim's death.  We disagree.

{¶8}   On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction.  *State v. Jenks,* 61 Ohio St.3d 259 (1991).  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979).  On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52.  The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.  We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. Jamison,* 49

Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶9}   Appellant's challenges under this assignment pertain to the murder and felonious assault convictions because the issues addressed are identification and causation.   Appellant was convicted of murder in violation of R.C. 2903.02(B) which states: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."   Appellant was also convicted of felonious assault in violation of R.C. 2903.11(A)(2) which states: "No person shall knowingly do either of the following:***Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

IDENTIFICATION TESTIMONY

{¶10} There were two eyewitnesses to the shooting, Jasamine Tyson and Ashley Kelly.  Both of them were sitting in a car in the parking lot of the Friendly Corner Inn at closing time.  T. at 138, 154-155.  Both testified they observed a slight, black male with a gun in his hand approach the victim and say "stop fucking with me," heard two gun shots, and observed the shooter run away.  T. at 138-139, 156-158.  Ms. Kelly recalled seeing the shooter earlier in the evening while she was outside smoking, "flashing a gun."  T. at 153, 157-158, 161-162.  Ms. Tyson testified she observed the individual flashing the gun, but it was not the same person as the shooter.  T. at 142. Both eyewitnesses failed to identify appellant in a photo array, although Ms. Tyson

picked one photograph that was not appellant. T. at 144-145, 159-160, 257. During her testimony, Ms. Kelly emphatically identified appellant in the courtroom as the shooter. T. at 163.

{¶11} A third witness, Deangelo Milini, testified he observed appellant and the victim inside the bar engaged in a verbal confrontation, and later saw appellant confronting his friend Dreane. T. at 189-191. Mr. Milini grabbed his friend and exited the bar, whereupon he heard two gun shots and ran behind the building after he looked around and saw appellant with a gun in his hand. T. at 191-193, 209. Mr. Milini positively identified appellant as the shooter from a photo array and in the courtroom. T. at 195-196, 203, 209.

{¶12} We note the trial court's jury instructions on identification testimony and photo array were extensive. T. at 409-419. Further, after appellant was notified that he was under arrest for murder, he stated "he had an out-of-state attorney for this one and that he could do five to eight years standing on his head." T. at 237.

{¶13} It is undisputed that the victim was shot and spent bullet casings were recovered from the scene. We find the jury could have easily relied on the testimony of Mr. Milini alone to establish that appellant was the shooter.

## CAUSE OF DEATH

{¶14} The victim did not die at the scene. He was transported to the hospital, whereupon he gave a statement to the police and died some six hours later. T. at 312-313. The Stark County Coroner, P.S. Murthy, M.D., testified the victim died as a result of 1) a gunshot wound and massive hemorrhaging, 2) enlarged heart, and 3) morbid obesity. T. at 303. Dr. Murthy readily admitted the enlarged heart and morbid obesity

did not help the situation, but they were only secondary factors as the gunshot wound was the cause of death, "no question about that." T. at 303-304. Dr. Murthy ruled the manner of death was homicide. T. at 304-305.

{¶15} Upon review, we find the record is replete with sufficient, credible evidence on the issues of identification and causation to support the convictions, and do not find any manifest miscarriage of justice.

{¶16} Assignment of Error I is denied.

II

{¶17} Appellant claims the trial court erred in admitting two autopsy photographs which were inflammatory and highly prejudicial. We disagree.

{¶18} In *State v. Maurer,* 15 Ohio St.3d 239 (1984), paragraph seven of the syllabus, the Supreme Court of Ohio held the following:

Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number.

{¶19} Evid.R. 104 places the trial court in the position of determining admissibility of evidence. Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." Evid.R. 402 states the following:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible.

{¶20} Further consideration is required under Evid.R. 403(A) which states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶21} Defense counsel objected to State's Exhibits 9B and C, two autopsy photographs depicting hemorrhaging near the gunshot wound. T. at 369. The trial court ruled as follows (T. at 370-371):

> THE COURT: The Court on Exhibit 9, now that 9D has been withdrawn by the State, and I would indicate on the record that I had the opportunity to review the photos before this point in the trial and I had indicated to the State that I had some concerns with 9D, they have now withdrawn that exhibit.

Based on that withdrawal, the Court would find that the other two exhibits, which basically show the wound site and the hemorrhaging that occurred with it, that those were relevant, they were relevant to the doctor's testimony. The Court would find that they are as tasteful as those type of photos can be. There's nothing there.

9D was gruesome, and that's why the Court had some concerns, but that's been voluntarily withdrawn by the State. The other two exhibits that were objected to I think are relevant, they do show things that the Coroner has discussed, and the Court finds that they are not overly prejudicial or overly graphic other than what is necessary to show the point that was being made as part of the autopsy. So they will be admitted over objection.

{¶22} None of the photographs were displayed or passed to the jury per the trial court's ruling in limine (T. at 12-13):

THE COURT: Let me indicate this, you've all done cases with me before, what I will do and I know Mr. Barr's practice is that he will not publish these photos to the jury for them to look at until the Court has the opportunity, with counsel, to determine their actual admissibility. They'll simply be identified and indicated that they are photos from the scene. I have absolutely no problem with that.

If, as we go through those, you start to think there's too many being at least identified, then come up and we'll deal with it at that point. But prior to admission, then I will go through the photos, look at those myself, and we can do this at sidebar, and make a determination as to what will then actually be published to the jury by way of either being used in closing argument or go back to the jury room.

{¶23} During the objection discussion cited above, the prosecutor noted the following (T. at 371-372):

MR. BARR: And just for the record, Your Honor, I would like the record to reflect that when Dr. Murthy looked at State's Exhibit 9D, he did not publish it to the jury and we kept it hidden from the jury so the jury did not see that photograph.

THE COURT: No, and I would indicate we had discussed that at a sidebar and by pretrial conference, and the State exactly followed my directive. And, in fact, I would indicate that Mr. Barr basically stood between the jury and Dr. Murthy in case he would have accidentally turned the photo around for some reason, which he did not do. So it was not published to the jury.

{¶24} Evidence that is gruesome or unpleasant may still be admitted if it is relevant to the particular facts of the case. State's Exhibit 9B depicted a large incision

(10 inches) on the victim's thigh with extensive hemorrhaging of the tissue, and State's Exhibit 9C was a closer view of the same area. T. at 308-309. Dr. Murthy testified as to the extent of the victim's injuries and his external/internal examination of the victim. T. at 298-300. Dr. Murthy's "final anatomic diagnosis" consisted of a "gunshot wound of left thigh with multiple fractures and massive hemorrhage," "cardiomegaly with biventricular hypertrophy" (enlarged heart), and "morbid obesity," with the gunshot wound being the cause of death, "no question about that." T. at 303-304.

{¶25} On cross-examination, defense counsel inquired about the time between the victim's hospitalization and death, pointed out there was no damage to his femoral artery, and asked if the victim's enlarged heart, morbid obesity, and alcohol intoxication were factors in his death. T. at 312-319. Defense counsel attempted to minimize the gunshot wound as the cause of death.

{¶26} Based upon the cross-examination of Dr. Murthy, we find the admission of State's Exhibits 9B and C were relevant, and given the extensive discussion of the victim's physical size, not unduly prejudicial. The trial court did not err in admitting the complained of photographs.

{¶27} Assignment of Error II is denied.

III

{¶28} Appellant claims the trial court erred in permitting hearsay testimony under the excited utterance exception of Evid.R. 803(2). We disagree.

{¶29} Under Evid.R. 803(2), excited utterances are not excluded by the hearsay rule, even though the declarant is available as a witness. An excited utterance is a

"statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

{¶30} Specifically, appellant complains of testimony offered by Canton Police Patrolman Michael Roberts. Patrolman Roberts testified that about twenty minutes after the shooting, he went to the hospital and spoke with the victim who stated appellant was the shooter. T. at 175, 177. Patrolman Roberts agreed the victim was "still under the stress of the shooting" and was being treated by doctors and nurses in the trauma room in the emergency department. T. at 175.

{¶31} Upon objection, the trial court concluded that a statement made some twenty minutes after the shooting while receiving treatment was an ongoing emergency and qualified under the excited utterance rule. T. at 176-177.

{¶32} Given the ongoing treatment, the corroborative testimonies of Mr. Milini and Ms. Kelly, and the need to develop the remaining testimony concerning appellant's arrest and subsequent statement, we conclude the trial court did not err in permitting the complained of testimony.

{¶33} Assignment of Error III is denied.

{¶34} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Farmer, P.J.

Wise, J. and

Baldwin, J. concur.

SGF/sg 514