OPINION
Plaintiff-appellant, Linda Crooks, appeals from the November 23, 1998 decision and entry of the Franklin County Court of Common Pleas granting in part and denying in part defendant-appellee's, Consolidated Stores Corp.'s ("Consolidated"), motion for partial summary judgment filed February 17, 1998, and denying her motion to strike the motion for partial summary judgment. Crooks also appeals from the December 9, 1998 judgment entry entering judgment in favor of appellee on her contract claim that was tried to a jury. For the reasons that follow, we affirm the judgment of the court of common pleas.
Linda Crooks was employed at the headquarters of Consolidated in Columbus, Ohio, for approximately six years until she was terminated from her employment on August 4, 1994. At the time of her termination, Crooks was the manager of treasury services. During her period of employment at Consolidated, she consistently received excellent performance evaluations.
Crooks is addicted to the benzodiazapine family of drugs, which includes Valium and Tranzene. Crooks reports a long history of substance abuse beginning from the time she was approximately thirteen years old. In 1983, Crooks entered an in-patient program for substance abuse at Talbott Hall located at what was then St. Anthony's Hospital. At the time, Crooks was addicted to quaaludes. Crooks's treatment consisted of four weeks of in-patient treatment followed by twelve weeks of out-patient therapy.
In 1992, while an employee of Consolidated, Crooks was prescribed Ativan, a benzodiazapine, for anxiety. She also was prescribed prescription pain killers for dental work and a torn shoulder. She stated that the use of these prescription drugs triggered her addiction, and she relapsed. In May 1993, Crooks entered Riverside Hospital for substance abuse treatment. After this treatment, she began counseling with Jill McClelland, a certified substance abuse counselor.
In late 1993 or early 1994, Crooks began taking Valium which she obtained from a street source. Crooks was taking Valium at work up until she voluntarily reentered the in-patient drug treatment program at Riverside in January 1994.
Leslie Gagne, a licensed social worker and certified chemical dependency counselor, treated Crooks as an out-patient after Crooks was released from in-patient treatment at Riverside Hospital on January 26, 1994. Gagne testified by way of deposition that, when Crooks was admitted to Riverside Hospital as an in-patient, she was taking approximately one hundred twenty milligrams of Valium per day. Gagne further testified that, upon completion of the in-patient program, Crooks was to attend group therapy with Gagne and continue to undergo counseling with Jill McClelland, the counselor who referred her to the treatment center. According to Gagne's treatment notes, Crooks reported a relapse with her drug of choice in February 1994. On March 2, 1994, Crooks reported that she had been "clean" for thirteen days. Gagne also indicated that she would have discussed Crooks "brief return to use" with Crooks's counselor Jill McClelland. On May 6, 1994, Crooks returned to group therapy for the last time. Crooks was discharged from out-patient treatment with Gagne as of that date.
After being released from hospitalization, Crooks informed her supervisor, Jim McGrady, of her problems with drugs. Crooks told McGrady that, as part of her out-patient therapy, she needed extended lunch hours but that she would make certain that she would work eight hours each day. McGrady accepted this arrangement, and Crooks had no adverse employment consequences as a result of this arrangement. Other than extra time at lunch, Crooks did not request any other accommodation from Consolidated.
In March 1994, Consolidated implemented a drug testing policy. The company initiated a sixty-day moratorium before testing began in June 1994. All employees, including Crooks, were given various written policies and, as a manager, Crooks received education and training on substance abuse, how the policy would be implemented, and under what circumstances employees could be tested.
During the training session, Consolidated encouraged employees to come forward in the first sixty days of the program to inform the company of any alcohol or drug problems and were promised that no adverse action would be taken if they did so. At one of the training meetings that Crooks attended, she asked whether an employee, already in treatment, needed to inform the company of a drug addiction. Jo Roney, from Human Resources, responded "no" because the policy was not implemented to be embarrassing, punitive or demeaning. Because Crooks was already in rehabilitation and had informed her supervisor of her problems with drugs, she did not identify herself as a drug addict to any others at the company.
During the training session for supervisors, the company indicated there were five situations in which the company could drug test employees. The five situations were: (1) during the first ninety-day period of employment; (2) upon reasonable suspicion; (3) after an on-the-job accident; (4) upon transfer to a safety-sensitive position; and (5) follow-up testing after rehabilitation. According to the policy "mere `hunches' or rumor, speculation, or unsubstantiated information of third parties shall not be sufficient to meet the standard of reasonable suspicion." (Consolidated Store's Substance Abuse Policy and Procedures, appendix A at 2.)
Beginning in April of 1994, management employees at Consolidated received a number of complaints from associates in Crooks's department regarding her management style. In July of 1994, Chris McCoy, a subordinate to Crooks, had a work-related dispute with Crooks at Consolidated. McCoy complained to Roney in Human Resources about Crooks's management style and also spoke to Brad Waite, Senior Vice President of Human Resources. McCoy alleged that Crooks was a drug addict and that she was currently using drugs. She observed Crooks staring into space and engaging in erratic behavior. McCoy also informed Waite that Crooks was a lesbian, and McCoy claimed that Crooks had made sexual advances toward her.
On Wednesday, July 27, 1994, Crooks asked Patti Monet, another supervisor, how to deal with employee problems. Monet offered Crooks Tranzene, a tranquilizer that Monet's physician had prescribed for her. Crooks took the pill. That same day, Jo Roney, Jim McGrady and Brad Waite met with Steven Bromet, Senior Vice President of Human Resources and Information Services, to discuss Crooks's situation. Based upon the reports of erratic behavior and alleged drug use, the managers made the decision to request that Crooks submit to a drug test in accordance with Consolidated's substance abuse policy.
Pursuant to the policy, a meeting was scheduled with Crooks to describe the testing protocol and the reasons for the test. At the meeting, and prior to the actual test, Crooks admitted that she would likely test positive as she had taken a pill at work that morning for which she did not have a prescription. Following her meeting with Mr. Waite and the others, Crooks was tested for drugs at an off-site facility. Crooks was suspended with pay pending receipt of the test results.
On August 5, 1994, the company was notified that Crooks had tested positive for a controlled substance known as benzodiazapine. Prior to notice to the company, Crooks was given an independent review of the positive test result by a medical review office unaffiliated with Consolidated. This review gave Crooks the opportunity to produce a legitimate explanation for a positive test result prior to notification to the company. The medical review officer gave Crooks five days in which to produce a prescription for the controlled substance found in her system. Crooks was unable to provide a prescription.
On August 2, 1994, Crooks's counselor, Jill McClelland, wrote a letter to Brad Waite summarizing Crooks's treatment and indicating that she believed the July 27, 1994 incident was an isolated "slip" and that Crooks was making progress in her drug rehabilitation. McClelland suggested regular and/or random drug screens could be used to insure Crooks was complying with the substance abuse policy. McClelland did not mention the previous return to use in February 1994, as noted by Crooks's group therapist Gagne. Throughout her deposition, Crooks insisted that, following her return to work in January 1994, the only time she had "taken something" was the day she was tested. After receiving the positive test results, Consolidated terminated Crooks on August 8, 1994.
On January 18, 1995, Crooks filed an action in the Franklin County Court of Common Pleas (case No. 95CVH-01-374) against Consolidated and five corporate officers. Appellant claimed: (1) discrimination and discharge on the basis of her disability of drug addiction under R.C. Chapter 4112 et seq.; (2) violation of Ohio public policy; (3) breach of employment contract, including Consolidated's drug testing policy; (4) invasion of privacy; and (5) intentional infliction of emotional distress. On January 17, 1996, the trial court granted in part and denied in part Consolidated's motion for summary judgment. In its decision, the trial court granted summary judgment on all of Crooks's claims, except those for breach of contract and violation of public policy.
Both parties filed motions for reconsideration and, on February 29, 1996, the trial court denied Crooks's motion for reconsideration and granted Consolidated's motion for reconsideration. As a result of these decisions, the trial court dismissed Crooks's public policy claim. On March 29, 1996, the case was dismissed without prejudice.
On March 17, 1997, Crooks refiled her case against Consolidated, but dropped her claims against the corporate officers (case No. 97CVH-03-3743). The refiled case contained the same allegations and claims as the original case.
Consolidated filed a motion for partial summary judgment on February 16, 1998, fifty-eight days after the dispositive motion cut-off deadline of December 20, 1997. On March 16, 1998, Crooks filed a motion to strike Consolidated's motion for filing out of rule. On November 23, 1998, the trial court issued a decision denying the motion to strike, and granting in part and denying in part Consolidated's motion for partial summary judgment.
In its decision, the trial court noted that Crooks had not alleged any new facts pursuant to Civ.R. 56(E), in support of her claims. Furthermore, Crooks had not alleged, and the trial court was not aware of any change in case law relied upon by the trial court in its prior decision on Consolidated's motion for partial summary judgment and the accompanying motions for reconsideration. Accordingly, the trial court adopted its earlier decision granting in part and denying in part Consolidated's motion for partial summary judgment in case No. 95CVH-01-374. The trial court further adopted its decision denying Crooks's motion for reconsideration and granting Consolidated's motion for reconsideration in case No. 95CVH-01-374.
The breach of contract claim went to a jury trial on November 23, 1998 through December 1, 1998. The jury found that Crooks was an at-will employee and, therefore, the trial court entered judgment in favor of Consolidated on December 9, 1998.
Crooks filed a timely notice of appeal assigning as error the following:
First Assignment of Error
 The trial court erred when it granted summary judgment for Defendant/Appellee on Plaintiff/Appellant's disability discrimination claim under Ohio Revised Code Chapter 4112 because there were genuine issues of fact regarding disparate treatment, motivation for discharge and reasonable accommodation.
Second Assignment of Error
 The trial court erred when it did not grant Appellant's Motion for mistrial when a juror concealed material information during voir dire about knowing attorneys associated with Appellee's law firm.
Third Assignment of Error
 The trial court erred when it refused to admit evidence under O.R.C. § 4141.21 of a prior inconsistent statement made by the Manager of Human Resources Brad Waite under oath at a hearing before the Ohio Bureau of Employment Services Board of Review.
Fourth Assignment of Error
 The trial court erred when it permitted admission of evidence about Appellant's post-discharge drug use because it is not relevant under Ohio Rule of Evidence 402 or its marginal relevance is substantially outweighed by its prejudicial nature under Ohio Rule of Evidence 403.
Fifth Assignment of Error
 The trial court erred when it denied Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment filed 58 days after the Motion cutoff deadline because Appellees failed to demonstrate excusable neglect under Ohio Rule of Civil Procedure 6(B).
In her first assignment of error, Crooks contends that the trial court erred in granting summary judgment on her claim for handicap discrimination. Crooks's argument against summary judgment is twofold. First, she contends that, because she was a handicapped individual who could safely perform the essential functions of her job, Consolidated had a duty to make a reasonable accommodation to her handicap, i.e., that she be given a second chance to conform to the company's substance abuse policy. Crooks argues that a reasonable accommodation would be to allow her to keep her job but to subject her to random drug screens. Second, Crooks argues that she was treated differently than non-disabled persons under the company's drug testing policy in that she was tested without reasonable suspicion and was discharged without progressive discipline.
Our review of a motion for summary judgment is de novo.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41; Koos v.Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588. Summary judgment is proper only when a party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); State ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181.
Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. The moving party, however, cannot discharge its initial burden under the rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmoving party has no evidence to support its claims. Id.; Vahila v. Hall
(1997), 77 Ohio St.3d 421. The moving party's initial burden thus is discharged, requiring the nonmoving party to comply with Civ.R. 56(E). Id. at 430.
Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.Dresher, supra, at 293; Civ.R. 56(E).
In order to establish a prima facie case of handicap discrimination under R.C. 4112.02, the person seeking relief must demonstrate: (1) that he or she was handicapped; (2) an adverse employment action was taken by an employer, at least in part, because the individual was handicapped; and (3) the person, though handicapped, can safely and substantially perform the essential functions of the job in question. Hood v. Diamond Products, Inc. (1996), 74 Ohio St.3d 298, paragraph one of the syllabus (citingHazlett v. Martin Chevrolet, Inc. [1986], 25 Ohio St.3d 279). Once the person seeking relief establishes a prima facie case of handicap discrimination, the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken. Hood, citing Plumbers Steamfitters Commt. v. Ohio CivilRights Comm. (1981), 66 Ohio St.2d 192, 197. If the employer establishes a nondiscriminatory reason for the action taken, then the person seeking relief must demonstrate that the employer's stated reason was a pretext for impermissible discrimination.Hood, at 302, citing Plumbers Steamfitters, at 198.
Based on Crooks's long history of chemical dependency, the trial court found that Crooks had established that she was handicapped, thus fulfilling the first prong of a prima facie case of handicap discrimination.[1] The trial court also found that Crooks had raised a genuine issue of material fact as to whether Consolidated's reason for terminating her was motivated at least in part because of her handicap. The trial court based this finding on the fact that management personnel were aware of Crooks's in-patient treatment at Riverside Hospital and that upon her release had permitted her to take extended lunch hours to meet with her counselor. Finally, the trial court found that Crooks received excellent performance reviews and was able to safely and substantially perform the essential functions of her job. Having found that Crooks had established a prima facie case of handicap discrimination, the trial court then went on to find that Crooks had failed to demonstrate the existence of a genuine issue of material fact on the issue of pretext because Crooks had been terminated for violating Consolidated's substance abuse policy.
Crooks first argues that this court should not apply the shifting burden analysis set forth in McDonnell Douglas Corp. v.Green (1973), 411 U.S. 792, in a case of handicap discrimination. Crooks urges this court to adopt the rule that, after establishing a prima facie case of handicap discrimination, the court need not consider whether the employer's articulated nondiscriminatory reason for an adverse employment action is a pretext for impermissible discrimination. We disagree.
Although we are aware of the line of appellate cases cited by Crooks that the McDonnell Douglas test is misplaced in a case of handicap discrimination, the more recent pronouncement of the Ohio Supreme Court in Hood is that the shifting burden analysis is applicable in the handicap discrimination context.Id. at 302. Accordingly, we must analyze the evidence to see if Crooks presented sufficient evidence to create a genuine issue of material fact on the issue of pretext.
Crooks contends that the trial court's finding that she failed to show pretext is directly contradicted by its earlier finding of a factual issue regarding whether her termination was motivated in part by her handicap. Again, we disagree.
Consolidated's articulated reason for discharging Crooks was that she was terminated for just cause: to wit, violation of the company's substance abuse policy. Here, Crooks's violation of the company's substance abuse policy was directly related to her handicap of drug addiction. Thus, when her employer terminated her for violation of its policy, the adverse action was taken, at least in part, because Crooks's drug addiction led her to violate the company's substance abuse policy. This does not mean, however, that the discharge for violation of the substance abuse policy was a pretext for discrimination.
In an attempt to show pretext, Crook argues that she was treated differently than other employees who were discharged under the company's drug testing policy. Prior to Crooks's termination, Consolidated had terminated four other employees who tested positive for drugs. Crooks argues that she was somehow treated differently than those other employees because they were in safety sensitive positions, had an accident, had been previously counseled for absenteeism, or had a short tenure with the company. Consequently, Crooks argues that, although the company may have been justified in terminating those employees, she should have been given a second chance because she suffered from the handicap of drug addiction. Crooks has failed, however, to demonstrate that she was treated less leniently than any other employee who tested positive for drugs. Regardless of whether the other employees were or were not similarly situated to Crooks, the undisputed fact remains that, after Consolidated adopted its substance abuse policy, every employee who tested positive for drugs was immediately terminated.[2]
Crooks also argues there is a genuine issue of material fact as to whether the company had reasonable suspicion to test her for drugs. However, the undisputed evidence is that management had received reports that Crooks was behaving somewhat erratically and using drugs at work. Moreover, pursuant to the substance abuse policy and prior to actually administering the test, management personnel met with Crooks. Under the policy, only if the employee did not have an acceptable explanation for the instance of questionable behavior was the manager to proceed with drug testing. However, at that meeting, Crooks admitted that it was likely she would have a positive drug test.
Finally with respect to pretext, Crooks argues there was direct evidence of discrimination, when McGrady told a human resources employee that he had concerns that Crooks had access to a vast amount of company assets. McGrady made the remark shortly after Crooks returned from in-patient treatment and months before the incident leading to her termination. One isolated comment, remote in time from the adverse employment action, is insufficient to create an inference of pretext. See Byrnes v. LCICommunications Holdings Co. (1996), 77 Ohio St.3d 125, 130 (there must be a link between remarks and discharge that could logically support the inference that the discharge was the result of discriminatory intent). Thus, Crooks has failed to demonstrate a genuine issue of material fact as to the issue of pretext.
Crooks next argues that, because her misconduct was a manifestation of her disability, Consolidated had a duty to provide her with a reasonable accommodation. Despite the fact that Crooks had already been given the opportunity to take extended lunch hours to attend counseling sessions, Crooks argues that, after her relapse and positive drug test, she should not have been terminated. Several days after being tested for drugs, Crooks's drug counselor wrote a letter to Brad Waite recommending regular and/or random drug screens to "re-establish confidence that she is a drug-free employee capable of continuing her job in a satisfactory way." Instead, Consolidated terminated her employment.
Based on the record before us, we do not find that Consolidated had an obligation to continue Crooks's employment after she violated the company's substance abuse policy. Crooks was not discharged because she was a drug addict. In fact, the record shows that, when management became aware of Crooks's addiction, they took steps to accommodate her by approving extended lunch hours for counseling sessions. Crooks has not identified any instance of alleged handicap discrimination occurring in her employment other than her discharge. She has presented no evidence that her discharge was based on anything other than her using illegal drugs at work and testing positive in violation of the company's substance abuse policy. Nor has she set forth a single occasion where a non-handicapped employee was treated differently. It was not until Crooks violated the company's substance abuse policy by taking drugs at work for which she did not have a prescription that the company terminated her. Where a drug-addicted employee is discharged from her employment for violation of a substance abuse policy and not because of her handicap, the employer does not have a duty to accommodate the employee by giving her a second chance not to violate the policy. This is because the burden of proof of inability to accommodate a handicap is applicable only where an employer discharges an employee on the basis of her handicap. See Salazar v. Ohio CivilRights Comm. (1987), 39 Ohio App.3d 26, 28. Consequently, Crooks has failed to establish a genuine issue of material fact on the issue of reasonable accommodation. The first assignment of error is not well-taken and is overruled.
In her second assignment of error, Crooks argues the trial court abused its discretion when it did not grant her motion for a mistrial based on a juror misconduct. Crooks moved for a mistrial on the grounds that a juror did not disclose during voir dire that she knew attorneys from Consolidated's law firm, Schottenstein, Zox Dunn. However, the record does not reveal that the potential jurors were ever asked whether they knew any of the lawyers with that particular law firm. Rather, the portion of the record transcribed on appeal reveals the following:
 MR. DAVIDSON: Thank you, Your Honor. Like to say that I was the one who insisted that we not work on Friday. My name is Jim Davidson again.
 I don't think that we got the names of our law firms to you. The name of the firm that I work at is Schottenstein, Zox and Dunn. We're down here at 41 South High Street in the Huntington Center. Has anyone had any business with us or against us?
 And Ms. Lewis and Mr. Kessler are at the firm of Blaugren, Herbert and Martin in Dublin. Has anyone had any business with that firm or on the other side of any transactions or cases with that firm?
 Thank you. [Partial Tr. of Nov. 23 and 24, 1998, at 1-2.]
Based on the record before us, it is clear that the potential jurors were not asked if they knew any of the lawyers associated with Schottenstein, Zox Dunn. The jurors were merely asked if they had any business with or against the law firms involved in the case. The allegation of failure to disclose material information and denial of the right to exercise a peremptory challenge must fail when the juror has not been asked to disclose such information. Therefore, the trial court did not err in failing to grant a mistrial. The second assignment of error is not well-taken and is overruled.
In her third assignment of error, Crooks argues that the trial court erred in excluding impeachment evidence of a prior inconsistent statement made by Brad Waite, at a hearing before the Ohio Bureau of Employment Services ("OBES"). Waite testified that he could not identify a document entitled "chronology of events." Crooks argues that a tape recording of her unemployment compensation hearing indicates Waite could identify the document and that it was a true portrayal of events. The trial court excluded Waite's prior testimony on the basis that R.C. 4141.21
precluded admission of the testimony furnished to OBES.
R.C. 4141.21 states, in part:
 * * * [T]he information furnished to the administrator of the bureau of employment services by employers or employees pursuant to this chapter is for the exclusive use and information of the bureau of employment services in the discharge of its duties and shall not * * * be used in any court in any action or proceeding pending therein, or be admissible in evidence in any action, other than one arising [under the exceptions stated in this section]. * * *
Thus, pursuant to statute, the information actually furnished to OBES was inadmissible in Crooks's subsequent civil action. See Pasanovic v. American General Finance, Inc. (Sept. 17, 1992), Franklin App. No. 92AP-651, unreported (1992 Opinions 4012). The third assignment of error is not well-taken and is overruled.
In her fourth assignment of error, Crooks argues that the trial court abused its discretion by admitting evidence of Crooks's drug use following her termination from Consolidated. Crooks argues that the evidence was irrelevant and prejudicial, and, in the event this case is remanded for trial on any of the other assignments of error, that this court rule on the admissibility of this evidence for the next trial.
Were we to address the admissibility of this particular evidence, we would merely be rendering an advisory opinion as Crooks has not assigned this alleged error as an independent basis for reversal of her breach of contract claim. The established policy in Ohio prohibits appellate courts from rendering such opinions. See White Consolidated Industries v. Nichols (1984),15 Ohio St.3d 7; Cascioli v. Central Mut. Ins. Co. (1983), 4 Ohio St.3d 179;Armco, Inc. v. Pub. Util. Comm. (1982), 69 Ohio St.2d 401. Moreover, given our disposition of this case, there will be no remand. Therefore, we overrule the fourth assignment of error on the basis that the issue is moot.
In her fifth assignment of error, Crooks argues the trial court erred in denying her motion to strike Consolidated's motion for summary judgment as being filed out of rule. The trial court denied the motion on the grounds that cases should be decided on their merits, where possible, rather than on procedural grounds.
While admitting that it filed its motion for summary judgment well past the deadline for dispositive motions, Consolidated argues Crooks did not suffer prejudice since the claims were previously dismissed by the trial court in the originally filed case and the refiled case did not raise any new facts or theories not previously considered by the trial court. This argument begs the question of whether the trial court should have even considered the motion filed fifty-eight days past the dispositive motion deadline.
Nevertheless, we do not find Crooks was prejudiced by the trial court allowing Consolidated to file its motion for partial summary judgment out of rule. As discussed in connection with the first assignment of error, Consolidated was entitled to judgment as a matter of law on Crooks's claim of handicap discrimination as she was unable to establish a genuine issue of material fact on the issue of accommodation or whether she was treated differently than non-disabled persons under Consolidated's drug testing policy. The fifth assignment of error is not well-taken and is overruled.
Based on the foregoing, we overrule the first, second, third, and fifth assignments of error, and overrule as moot the fourth assignment of error. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KENNEDY and BOWMAN, JJ., concur.
[1] We do not believe on this record that Crooks has demonstrated that she is handicapped. Specifically, under R.C.4112.02(Q), a handicap does not include a disease or condition caused by an illegal use of any controlled substance. However, Consolidated did not argue this as a basis for summary judgment and, thus, has waived the argument. Although not overrulingHazlett v. Martin Chevrolet, Inc. (1986), 25 Ohio St.3d 279, the Ohio Supreme Court has stated that in any case of unlawful discrimination practice involving handicaps, alcohol and/or drugs occurring after June 30, 1992, interested persons were cautioned to review the current version of R.C. 4112.01 and 4112.02, and specifically, R.C. 4112.01(A) (13) and 4112.02(Q). Hood v. DiamondProducts, Inc. (1996), 74 Ohio St.3d 298, 301 fn. 1, 303, fn. 3. Under the current law, it is illegal to discriminate against an employee who is participating in a supervised drug rehabilitation program and no longer is engaging in the illegal use of any controlled substance. R.C. 4112.02(Q) (1) (b) (ii). However, it is not discrimination to fire someone who currently uses illegal drugs. R.C. 4112.02(Q) (1) (a). Although Crooks was undergoing substance abuse counseling, she admittedly engaged in the illegal use of a controlled substance, thus removing her from the safe harbor provisions of R.C. 4112.02(Q) (b). See, also, Starr v.Delta Airlines, Inc. (Dec. 29, 1995), Hamilton App. No. C-950217, unreported (plaintiff's current use of illegal drugs excluded her from protection afforded to addicts under the statute).
[2] Consolidated's substance abuse policy stated that failing a drug/alcohol test did not automatically mean the employee would be disciplined or fired. Consolidated retained the discretion to require treatment and/or discipline, up to and including termination at its sole discretion.