OPINION
Marty Matusoff Associates, plaintiff-appellant, appeals a decision of the Franklin County Court of Common Pleas. The trial court granted motions for summary judgment filed by defendants-appellees Robert D. Kuhlman and James M. Houk. We affirm in part and reverse in part the judgment of the trial court.
Appellant[1] filed a complaint against Kuhlman and Houk on May 23, 1997. In the complaint, appellant alleged that in late 1994 or early 1995, Kuhlman asked appellant to help him acquire and develop a sixty-two acre parcel of real estate in Findlay, Ohio. The property was owned by William, Linda, Clifford, and Madonna Tong. The development was to be called the "Findlay Project." Appellant, a real estate broker, stated that he was "very experienced and knowledgeable concerning commercial and residential real estate development" and that Kuhlman orally agreed to pay appellant twenty-five percent of the net profits from the Findlay Project "[i]n exchange for [appellant's] services." Appellant claims that he:
 * * * provided all of the services comprehended under the agreement, including, but not limited to, evaluating the 62 acre parcel for development suitability, negotiating and documenting the purchase of the 62 acre parcel; planning a development for the parcel to maximize its marketing and economic desirability; engaging appropriate, experienced professionals to provide necessary land planning and marketing services; introducing investors to the Project; and assisting in the resolution of zoning and other land use issues. * * *
Appellant alleged in his complaint that in the summer of 1996, "after [appellant] had provided nearly all of the agreed services," Kuhlman "began to cease contact" with appellant concerning the Findlay Project. Appellant further alleged that Kuhlman refused to pay appellant "under the agreement or on any basis that represented the reasonable value of [appellant's] services." Appellant also claimed that Kuhlman and Houk executed an agreement "by which Houk had acquired an interest in the Project."
In his complaint, appellant presented four claims: (1) breach of contract against Kuhlman; (2) quantum meruit against Kuhlman; (3) misrepresentation against Kuhlman; and (4) contractual interference against Houk. Kuhlman filed a motion for summary judgment on March 13, 1998, and Houk filed a motion for summary judgment on June 12, 1998.
On November 3, 1998, the trial court granted both motions for summary judgment. The court found that appellant could not recover on his breach of contract claim because "the agreement could not have been fully performed in one year, and thus, violates the Statute of Frauds." The court also found that since the Statute of Frauds barred the court from finding an enforceable valid contract existing between appellant and Khulman, appellant could not assert that Houk interfered with the contract. The court held that appellant could not recover on his quantum meruit claim because appellant "has not proffered evidence demonstrating the value of services rendered." The court further held that appellant could not recover on his misrepresentation claim because misrepresentation is a tort claim, and "a breach of contract claim cannot be converted into a tort claim." Appellant appeals this decision and presents the following five assignments of error:[2]
 A. The trial court erred in granting defendant-appellees' motions for summary judgment as to plaintiff-appellant's breach of contract claim based upon Ohio's Statute of Frauds (R.C. § 1335.05).
 B. The trial court erred in granting defendant-appellee Kuhlman's motion for summary judgment as to plaintiff-appellant's alternative quantum meruit claim.
 C. The trial court erred in granting defendant-appellee Kuhlman's motion for summary judgment as to plaintiff-appellant's alternative misrepresentation claim.[3]
 D. The trial court erred in granting defendant-appellee Houk's motion for summary judgment as to plaintiff-appellant's claim for tortious interference with the oral contract or the business relationship between plaintiff-appellant and defendant-appellee Kuhlman.
 E. The trial court erred in granting defendant-appellee's motions for summary judgment as to plaintiff-appellant's prayer for punitive damages respecting his alternative misrepresentation and interference claims.
Appellant argues in his first assignment of error that his contract claim is not barred by Ohio's Statute of Frauds. Appellant contends that the alleged contract could have been performed within one year, appellant fully performed the contract, and Kuhlman's promise to execute a written agreement precludes the application of the Statute of Frauds.
Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370; Gismondi v. MT Mortgage Corp. (Apr. 13, 1999), Franklin App. No. 98AP-584, unreported (1999 Opinions 736, 739).
Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Welco Industries, Inc. v. Applied Cos.
(1993), 67 Ohio St.3d 344, 346. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Baker v. The Buschman Co. (1998), 127 Ohio App.3d 561,566. A party seeking summary judgment on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293.
In order to sustain appellant's assignment of error, it must be shown that appellant presented sufficient evidence that a legally binding contract existed between appellant and Kuhlman. A contract is a promise or a set of promises for breach of which the law provides a remedy, or the performance of which the law in some way recognizes as a duty. Cleveland Builders Supply Co. v.Farmers Ins. Group of Cos. (1995), 102 Ohio App.3d 708, 712. "In order to declare the existence of a contract, both parties to the contract must consent to its terms, there must be a meeting of the minds of both parties, and the contract must be definite and certain." Dowd v. Barrett (Feb. 2, 1998), Warren App. No. CA97-08-084, unreported, following Episcopal Retirement Homes,Inc. v. Ohio Dept. of Indus. Relations (1991), 61 Ohio St.3d 366,369. Whether a meeting of the minds has occurred is a question of fact to be determined from all the relevant facts and circumstances. Garrison v. Daytonian Hotel (1995), 105 Ohio App.3d 322,325.
In the present case, appellant stated the following in an affidavit dated April 27, 1998:
 I agreed to contribute services to the development of the Tong Property (the "Findlay Project"). I agreed to (1) find and coordinate professional consultants to provide the necessary land planning and marketing services; (2) evaluate the 62 acre parcel for development and formulate an appropriate development strategy; (3) secure buyers who would buy and develop portions of the Tong property designed for condominiums and apartments, respectively; (4) introduce investors, if necessary; and (5) assist in the zoning process. In exchange for my services, Mr. Kuhlman agreed that I would receive 25% of the net profits from the Findlay Project plus real estate commissions for the sale of the condominium and apartment parcels.
We find that this is sufficient evidence to show that a contract may have existed between appellant and Kuhlman. Appellant outlines his obligations and states what Kuhlman was obligated to do in "exchange for my services." While Kuhlman has presented evidence that no such agreement existed, whether an oral contract existed and what were the terms of that contract are questions that should be resolved by the trier of fact. "Simply because the parties presently differ on whether a term existed in the oral contract does not automatically show that a meeting of the minds did not once exist." Dowd, Warren App. No. CA97-08-084.
Kuhlman argued at the trial court level that even assuming arguendo that a contract existed, the Statute of Frauds would render the alleged contract null and void. In his motion for summary judgment, Kuhlman argued that:
 * * * 25% of the net profits of the development Project cannot be calculated until the Project is completed. As such, Kuhlman's full performance under the alleged oral agreement was contingent upon the completed development of the Project. The evidentiary materials in this case conclusively establish that it was not impossible [sic]
to complete the development Project within one year of the formation of the alleged oral agreement.
As evidence of the impossibility of the Findlay project being completed within one year, Kuhlman argued that at the time of the alleged agreement: (1) the Tong property had not been purchased, (2) the July 1995 option designed by appellant enabled Kuhlman to purchase the Tong property within eighteen months, and (3) appellant stated in his deposition that it "took every bit of that [eighteen months] to make this development a real estate project." Appellant, in his brief opposing Kuhlman's motion for summary judgment, argued that "Kuhlman has not cited any factual or legal impediment which would have prevented the parties from completing the Project in one year." The trial court agreed with Kuhlman's argument, finding "that the agreement could not have been fully performed in one year, and thus, violates the Statute of Frauds."
Ohio's Statute of Frauds, partially contained within R.C. 1335.05, states in part that "[n]o action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement * * * is in writing and signed by the party to be charged therewith."
 For over a century, the "not to be performed within one year" provision of the Statute of Frauds, in Ohio and elsewhere, has been given a literal and narrow construction. The provision applies only to agreements which, by their terms, cannot be fully performed within a year; and not to agreements which may possibly be performed within a year, thus, where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds. * * *
Sherman v. Haines (1995), 73 Ohio St.3d 125, 127.
A review of the record shows that there is a factual dispute between Kuhlman and appellant concerning the amount of time that would have been required to complete the Findlay project. In the "Market Analysis Goals" document dated February 1, 1995, produced by R.D. Kuhlman Associates, Inc., the stated financial goal for 1998 "is to purchase/option * * * a $1,000,000.00 development project in the Findlay area." The stated financial goals for 1996 and 1997 involved developments in the Columbus area. The document also stated that the mission of R.D. Kuhlman 
Associates, Inc. was to "bring the investor and investment together and form a `SYNERGISTIC' real estate investment entity to participate in long term real estate investments" and that the "investments will have a consistent flow of cash over the long term." (Emphasis sic.) Appellant stated in his deposition that "The Findlay project was simply to be — to create value and sell land with a possible advent of developing lots and selling lots, but not build product." Appellant argues in his brief that this could have been performed within one year of the agreement between Kuhlman and appellant.
In granting summary judgment, the trial court also relied upon the following section from appellant's deposition:
 Q. * * * As we sit here today, Mr. Matusoff, can it be determined what 25 percent of the net profits is?
A. No.
 Q. Okay. Can it be determined what the net profits are from the project today?
A. No.
 Q. Okay. Could the alleged agreement have been fully performed prior to today?
A. Part of it.
 Q. But it could not have been fully performed prior to today, could it have?
A. No.
Q. It's not possible, is it?
A. No.
The court found that based upon this section, appellant "conceded freely in his deposition that the alleged oral agreement could not have been fully performed within a year." However, appellant claims that the reason why the amount of net profits could not have been determined on November 7, 1997, the date of the deposition, was because appellees changed the nature of the Findlay project after Khulman and appellant entered into their agreement. Appellant stated in his deposition that the goal of the Findlay project was to "sell land with a possible advent of developing lots and selling lots, but not build product" and that all of the parcels of the property could have been sold less than one year after Khulman and appellant allegedly entered into the agreement. After having reviewed the evidence, we find that it is unclear whether the alleged oral agreement between appellant and Kuhlman could have been performed within one year.
Accordingly, we find that genuine issues of material fact exist concerning the nature of the Findlay project and whether the Findlay project could have been completed within one year after Kuhlman and appellant allegedly entered into the agreement. Therefore, summary judgment should not have been granted concerning appellant's breach of contract claim. Appellant's first assignment of error is sustained. Appellant argues in his second assignment of error that even if he was unable to recover under his breach of contract claim, he would be able to recover under quantum meruit. Quantum meruit means literally "as much as deserved" and is based on an implied " `promise on the part of the defendant to pay the plaintiff as muchas he reasonably deserved to have for his labor.'" (Emphasissic.) Reid, Johnson, Downes, Andrachik Webster v. Lansberry
(1994), 68 Ohio St.3d 570, 573, fn. 1, quoting Black's Law Dictionary (6 Ed. 1990) 1243. "A party does not have to show how much work she performed in order to recover under quantum meruit, but rather must show evidence she performed some services for another's benefit and was not paid for those services."Sonnhalter v. Wilson (July 26, 1999), Tuscarawas App. No. 98AP0098, unreported, following Sonkin Melena Co. L.P.A. v.Zaransky (1992), 83 Ohio App.3d 169, 176. In the present case, appellant stated in his deposition that he spent two hundred seventy-six hours "doing the things that I told [Kuhlman] I would do." Appellant also stated that he did not characterize some of the services he provided as "the type of things that a real estate broker would provide." Appellant further stated that he was compensated for the services he provided that were considered "traditional real estate broker services," but he had not received compensation for the other services he provided.
Therefore, we find that summary judgment should not have been granted in favor of Kuhlman concerning appellant's quantum meruit claim because sufficient evidence was presented showing that appellant performed services for Kuhlman and that appellant was not paid for those services. We also note that if it is determined that appellant and Kuhlman entered into a contract concerning appellant's services, appellant cannot recover on his quantum meruit claim because a "party seeking a remedy under a contract cannot also seek equitable relief under a theory of unjust enrichment or quantum meruit, because the terms of the agreement define the parties' relationship in the absence of fraud, bad faith or illegality." Wolfer Enterprises, Inc. v.Overbrook Development Corp. (Feb. 26, 1999), Hamilton App. No. C-980115, unreported, following Pawlus v. Bartrug (1996),109 Ohio App.3d 796, 800. See, also, Century 21 Launders v. Evans
(Oct. 10, 1997), Ashtabula App. No. 97-A-0007, unreported. Appellant's second assignment of error is sustained.
Appellant argues in his fourth assignment of error that the trial court erred in granting Houk's motion for summary judgment concerning appellant's contractual interference claim. Appellant claimed in his complaint that Houk knew of the existence of the agreement between appellant and Kuhlman and that Houk "intentionally, willfully and without justification, interfered with the business relationship." The torts of interference with business relationships and contract rights generally occur when a person, without privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another.A B-Abell Elevator Co., Inc. v. Columbus/En. Ohio Bldg. Constr. Trades Council (1995), 73 Ohio St.3d 1, 14. The elements of tortious interference with a contract are: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) lack of justification; and (5) resulting damages. Fred SiegelCo., L.P.A. v. Arter Hadden (1999), 85 Ohio St.3d 171, paragraph one of the syllabus. Additionally, in determining whether a defendant acted improperly in intentionally interfering with a contract or prospective contract of another, consideration should be given to the following factors:
 * * * (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.
Id., paragraph three of the syllabus.
In his deposition, when asked what Houk "did that interfered with your agreement with Dan Kuhlman — your alleged agreement with Dan Kuhlman" appellant replied: "Formed a partnership with him and changed the deal." Appellant claims in his appellate brief that the following establishes his claim against Houk:
 * * * [Appellant and Kuhlman] clearly had an ongoing business relationship, and one which looked toward the exclusion of formal contract. Moreover, Houk was aware of that relationship at a very early time in its course: Matusoff introduced Houk to Kuhlman in mid 1995 as a land planning expert who could help get an appropriate development plan finalized and told Houk that he and Kuhlman were involved closely together in the development of the Tong Property. By April 17, 1995, Houk was already referring to Kuhlman as "your [appellant's] client."
 Houk also clearly understood what that development was to be and, without telling Matusoff, convinced Kuhlman to change it radically: apartments were abandoned and Kuhlman and Houk built condominiums on the condominium parcel themselves. The partnership which Kuhlman and Houk formed did not include Matusoff, consistent with Houk's belief that providing services was not sufficient to justify a profit percentage. As a result, Matusoff lost the substantial benefit of the relationship he had going with Kuhlman and was certainly prevented from entering into and carrying out the formal, written agreement which he and Kuhlman had originally contemplated. A more notable interference could hardly be imagined.
A review of appellant's claim shows that it is based only upon conjecture, speculation, and assumption, and not upon evidence. Appellant and Kuhlman "clearly [having] an ongoing business relationship, and one which looked toward the execution of a formal contract" does not establish tortious contractual interference because a "business relationship" alone does not establish the existence of a contract. Appellant provides no evidence that Houk intended to sever the alleged contractual relationship between appellant and Kuhlman. A review of the evidence fails to show that Houk intentionally procured the alleged contract's breach. In fact, when appellant was asked in his deposition whether Houk excluded appellant from the zoning process of the Findlay project, appellant stated "I don't know." When asked "what factual basis do you have for that, documents or otherwise, that Mr. Houk precluded you from bringing investors to the project?" appellant stated "I don't know whether he did or not except that it's very obvious that that function was replaced by Mr. Houk in great part in conjunction with Mr. Kuhlman and his partner."
Appellant also provides no evidence that changing the plans for the Findlay project ended his contractual relationship with Kuhlman. Appellant also provides no evidence of how Houk's involvement in the project denied appellant the ability to be paid a percentage of profits from the Findlay Project. In fact, appellant claimed in his deposition that he was still entitled to twenty-five percent of the future net profits of the Findlay project even though he was no longer involved with the project.
Simply because Houk became an investor in the Findlay Project and a partner with Kuhlman, does not establish that Houk intentionally excluded appellant and denied him a percentage of the profits from the Findlay project. Also, Houk's becoming involved in decisions involving the development of the Findlay Project does not show an intent to interfere with the alleged contractual relationship between appellant and Kuhlman. Accordingly, we find that appellant provided insufficient evidence to support his tortious contractual interference claim. Appellant's fourth assignment of error is overruled.
Since appellant withdrew his third assignment of error and we have overruled appellant's fourth assignment of error, the issues raised in appellant's fifth assignment of error concerning punitive damages are moot. Therefore, it is not necessary to address appellant's fifth assignment of error. App.R. 12(A)(1)(c).
Accordingly, appellant's first and second assignments of error are sustained, appellant's third, fourth and fifth assignments are overruled. The trial court's decision concerning appellant's breach of contract and quantum meruit claims are reversed and remanded to the trial court. We sustain the trial court's decision concerning appellant's claims of misrepresentation, tortious interference with a contract, and punitive damages.
Judgment affirmed in part; reversed in part; cause remanded.
BOWMAN and KENNEDY, JJ., concur.
[1] Although "Marty Matusoff Associates" is the appellant in the present case, since Marty Matusoff Associates is comprised only of Marty Matusoff, "Marty Matusoff" and "Marty Matusoff 
Associates" will both be referred to as "appellant."
[2] We note that on January 4, 1999, Kuhlman requested that this court issue an order staying appellant's appeal until the conclusion of his bankruptcy proceeding filed in the United States Bankruptcy Court, Northern District of Ohio on December 23, 1998. On January 27, 1999, we granted Kuhlman's request and held that all "proceedings are hereby stayed pending release by the U.S. Bankruptcy Court." On April 9, 1999, the bankruptcy court entered an order permitting appellant to proceed with the present appeal. Upon appellant's motion, we released the stay order on April 23, 1999. Thereafter, Kuhlman's bankruptcy counsel recommended to Kuhlman's [sic] appellate counsel to not "file an appellate brief or otherwise defend Kuhlman in this appeal" because a bankruptcy discharge "will be issued shortly, thereby relieving the Kuhlman's from any obligation to [appellant]." On April 27, 1999, Kuhlman's appellate counsel requested leave of this court to withdraw as counsel of record. We granted counsel's leave to withdraw on May 25, 1999. Since that time, Kuhlman has failed to file an appellee brief and has not defended himself in this appeal.
[3] Appellant withdrew this assignment of error in his reply brief filed on May 3, 1999.