DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the Lucas County Court of Common Pleas which, following a trial to the bench, entered judgment for appellee, D.D.P., Inc. dba Twedt's Grease Monkey #114 ("Grease Monkey"), in this breach of contract action. For the reasons stated herein, this court affirms the judgment of the trial court.
 {¶ 2} Appellant, Kirk Jornlin, sets forth the following assignments of error:
 {¶ 3} "Assignment of Error No. 1
 {¶ 4} "The trial court erred when it failed to make a finding concerning plaintiff's claim that his employment contract was breached by the defendant, this error affecting not only liability but also its damages analysis.
 {¶ 5} "Assignment of Error No. 2
 {¶ 6} "The trial court erred when it found that the history of the franchise operation indicated that the plaintiff would not be able to meet the target numbers necessary for his incentive bonus."
 {¶ 7} The following facts are relevant to this appeal. On October 30, 2000, appellant filed a complaint alleging breach of his employment contract by Grease Monkey. According to the complaint, appellant and Grease Monkey entered into an employment agreement ("agreement") September 1, 1995, which, in addition to his base salary as the manager of the facility located in Toledo, Ohio, provided for bonuses based upon performance and profitability. Appellant alleged in the complaint that he was terminated on June 25, 1998, and that he was damaged in excess of $25,000 by the breach of the agreement. On May 4, 2001, appellant filed a motion for default judgment as Grease Monkey failed to file an answer. A default judgment was entered against Grease Monkey on May 23, 2001. On June 7, 2001, Grease Monkey filed a motion to file an answer instanter and on August 8, 2001, filed a Civ.R. 60(B) motion to vacate, arguing failure of service of process and, thus, lack of personal jurisdiction. Appellant filed a memorandum in opposition to the Civ.R. 60(B) motion. On November 19, 2001, the trial court granted the Civ.R. 60(B) motion.
 {¶ 8} On May 9, 2002, appellant filed a motion for summary judgment. Grease Monkey filed a memorandum in opposition on May 17, 2002, and appellant filed a reply memorandum May 24, 2002. On November 7, 2002, the morning of trial, the trial court denied the motion for summary judgment and the case proceeded to trial.
 {¶ 9} Appellant testified he worked for Grease Monkey for two years and nine months; that prior to that employment, he had worked for Grease Monkey International ("GMI") as an assistant regional manager for one year and two months; that as assistant regional manager he was basically a franchise consultant; that he had an M.B.A. degree; that he met with Paul Twedt, the owner of six stores including the one in Toledo; that he entered into a three year term of employment with Twedt on September 1, 1995; and that under the agreement, in addition to his salary, he would get an annual bonus that would be paid monthly for the three years and an end-of-contract incentive bonus. Appellant testified that the annual bonus was based upon a base profitability of $50,000 per year with any increase in profitability above that resulting in appellant receiving 25 percent of that increase. In regard to the incentive bonus, appellant testified that this was based upon the profitability during the third year.
 {¶ 10} Appellant also testified that his first goal was to maximize car count, the number of cars in for service per day; he also worked on increasing ticket price which he testified he increased from $26-27 to $30-31. He testified that from September of 1995 through May 1998, the Toledo store was profitable every month. Appellant also testified that he took some vacation days in June 1998 for two reasons: 1) to rest up before he worked six to seven days per week for the remaining weeks on his contract in order to achieve the incentive bonus and 2) to learn more about air conditioning retrofitting. He testified that he planned on doing the air conditioning retrofitting to increase the average ticket price to $40 per car. Appellant also testified that Twedt visited the Toledo store while appellant was on vacation and that he received a letter on June 24, 1998, stating that he was not allowed in the store or to communicate with the employees.
 {¶ 11} Appellant presented an exhibit containing his calculations of the bonus he would have received if he had continued to run the Toledo store for the entire agreement. He testified that he based these calculations upon past performance car counts and used a $30 ticket price for June and $36 for July and August. Appellant also testified that Twedt would have saved money if appellant did not receive his incentive bonus as the result of a lowered operating profit for the final weeks of the agreement.
 {¶ 12} On cross-examination, in regard to his projections of a net operating profit for July 1998 of $15,109, appellant admitted that the closest net operating profit was $14,300 in June 1996, and next closest was $9,000 in May 1996; he also admitted that the average net operating profit over the 33 months he was employed as between $5,000 and $6,000. When asked if it was to his benefit to do the very best each month, appellant stated that it was not and that he did not do his best in the first two years. In regard to his projected net operating profit of $8,398 for June 1998, appellant stated that both car count and ticket average was low for the first part of the month but that the "month is made in the last week" before the July 4th holiday. Appellant admitted that he had never before reached his projected levels of average ticket prices. Appellant also admitted that he sent an E-mail to GMI in which he stated that Twedt has committed fraud and "screwed" appellant out of a lot of money.
 {¶ 13} When Twedt was called by appellant on cross-examination, Twedt admitted that the general policy of his company is to give notice to a manager if he is in trouble but that he did not give notice to appellant. Twedt also admitted that if appellant brought in operating profits of $23,000 in the last nine weeks of the agreement, Twedt would have lost $27,000.
 {¶ 14} On direct examination, Twedt testified that he has been a Grease Monkey franchisee since 1982; that he has owned the Toledo store since 1994; that if the operating cash flow for the last 12 months would exceed $66,667, appellant would receive an incentive bonus of an amount equal to two and a half times that amount less $150,000; that the actual operating cash flow for September 1997 through August 1998 was $43,440; that appellant earned only five monthly bonuses between September 1997 through August 1998; and that even if the store had shown the same operating profit as achieved in June, July and August 1997, appellant would not have reached the threshold of $67,000 needed for the incentive bonus.
 {¶ 15} Twedt also testified that appellant did not disagree with any of the base numbers used for calculations of his bonuses until March 1998; Twedt reviewed the numbers with his accountant and confirmed to appellant that the numbers used were fair. Appellant and Twedt met and reviewed a proposal appellant made to amend the agreement; Twedt testified that appellant wanted the base numbers in the agreement to be lowered because appellant did not think that he would make enough operating profit to make his incentive bonus. Twedt refused to change the numbers. Eventually, appellant proposed that he receive a lump sum of $20,000 and work for up to three weeks to enable Twedt to find a replacement; Twedt testified that he interpreted this to mean that appellant was planning to leave. Twedt also testified that appellant told him that he might have to find another job; Twedt concluded that appellant was dissatisfied with the job.
 {¶ 16} Twedt testified that when he visited the Toledo store he found things in disarray; a lack of cleanliness; and a non-working air conditioning machine. The assistant manager told him the crew was told not to tell Twedt about the non-working machine. Twedt admitted that he was upset with appellant about appellant's communication to GMI in which appellant accused him of fraud and dishonesty. Twedt also testified that in order for appellant to achieve his incentive bonus, he would have to make $23,000 more than the Toledo store actually made in the last weeks of the agreement.
 {¶ 17} On cross-examination, although Twedt agreed that 1998 was the first year the air conditioning retro-fitting was needed, he testified that this was not a GMI authorized service. On re-direct, Twedt explained that the reason he was not doing air conditioning retro-fitting was that there were concerns about the effectiveness in addition to it not being a GMI authorized service.
 {¶ 18} Andrew Strangio, the Vice President of Franchise and Services for GMI also testified. He testified that the company does projections based upon a franchisee's most current financial statement. He also testified that he had been in the Toledo store in June 1998; that the Toledo store was nowhere maximizing its fullest potential in June 1998; that the car count was stagnant; that the potential for ticket average per car was not being achieved; that cleanliness was not up to GMI standards; and that employees were below GMI standards in their appearance. Based upon these factors, Strangio told Twedt he had to become more involved in the day-to-day operations. Strangio testified that he and Twedt instituted a plan to make improvements and they saw an immediate impact on the ticket average; Strangio also testified that it appeared to him that Twedt was using his best efforts to maximize the profits to make the Toledo store more profitable.
 {¶ 19} In regard to appellant's projections, Strangio testified that based upon the industry standards with which he was familiar, it was not reasonable to project a car count of 1,351 and an operating profit of $15,109 for July 1998 or to project a car count of 1,255 and an operating profit of $13,382 for August 1998. He also testified that an air conditioning retrofit was not a GMI approved service because GMI had not fully tested the procedure; GMI recommended that its franchisees not perform the service; only two stores were testing the service. Strangio also testified that if a store was losing money in the first three weeks of June, it would still be a losing month regardless of what happened in the last week.
 {¶ 20} On cross-examination, Strangio testified that the franchise agreement states that franchisees should not do air conditioning retrofitting and if franchisees do, they are in violation of the franchise agreement for performing an unauthorized service. Strangio denied he and Twedt had discussed that terminating appellant would affect his right to recover the incentive bonus.
 {¶ 21} Appellant testified on rebuttal that the Toledo store was an approved test site for air conditioning retrofitting. He also testified that his projection of net operating profit did not include increased profits from air conditioning and ticket increases.
 {¶ 22} After the testimony was presented, the parties submitted written closing arguments. In a December 12, 2002 judgment entry, the trial court entered judgment for Grease Monkey. Appellant filed a timely notice of appeal.
 {¶ 23} In his first assignment of error, appellant argues that the trial court erred when it failed to make a finding concerning appellant's claim of breach of contract. This court finds no merit in this assignment of error.
 {¶ 24} In its judgment entry, after reviewing in detail the evidence presented at trial, the trial court concluded that "Plaintiff has the burden of proof in this case" and that "He has not met that burden."
 {¶ 25} A contract is a promise or a set of promises, the breach of which the law provides a remedy. Cleveland Builders Supply Co. v. FarmersIns. Group of Cos. (1995), 102 Ohio App.3d 708, 712. A plaintiff must present evidence on several elements to successfully prosecute a breach of contract claim. Doner v. Snapp (1994), 98 Ohio App.3d 597, 600. The elements are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. Id. As the trial court noted, appellant did not meet the burden of proof with regard to the elements of his case.
 {¶ 26} Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 27} In his second assignment of error, appellant argues that the trial court erred when it found that the history of the franchise indicated that appellant would not be able to meet the target numbers necessary for him to achieve his incentive bonus. This court finds no merit in this assignment of error.
 {¶ 28} It is well established that we cannot substitute our judgment for that of the trial court in reviewing the judgment of the trial court. It is the trial court's function as the trier of fact to observe the demeanor of the witnesses, examine the evidence, and weigh the credibility of the testimony and evidence presented. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. It was within the province of the trial court to believe the witnesses for Grease Monkey and disbelieve appellant. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 29} Appellate courts are not factfinders; we neither weigh the evidence nor judge the credibility of witnesses. Cross Truck v Jeffries
(Feb. 10, 1982), Stark App. No. CA-5758. It is not the role of an appellate court to choose between conflicting testimony but to determine if there is sufficient evidence to support the trial court's findings and conclusions. Id. As the trial court's judgment in favor of Grease Monkey is supported by some competent, credible evidence going to all of the essential elements of the case, we cannot interfere with that judgment.C.E. Morris Co. v. Foley Construction. Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 30} Accordingly, appellant's second assignment of error is found not well-taken.
 {¶ 31} On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
 JUDGMENT AFFIRMED. Peter M. Handwork, P.J., Mark L. Pietrykowski, J., Judith AnnLanzinger, J., CONCUR.