DECISION AND JUDGMENT ENTRY
{¶ 1} This matter comes before the court on appeal from the Ottawa County Court of Common Pleas wherein the court granted judgment to appellees, Lester and Judith Kuhlman, in a case involving an option to purchase land agreement. For the reasons that follow, we affirm in part and reverse in part.
 {¶ 2} In 2001, the Kuhlmans owned three parcels of land located in the township of Put-in Bay, Ohio. The parcels contained approximately 4.2122 acres, 1.8520 acres and 3.346 acres respectively. On November 7, 2001, appellant, Cecil Weatherspoon and the Kuhlmans entered into a lease and option to purchase 3 acres of the property. The document was drafted by Weatherspoon. The term of the lease was for the period beginning December 1, 2001 and ending on January 31, 2003. The option to purchase was effective until December 31, 2002. After exercise of the option, closing was to take place no later than January 31, 2003. Weatherspoon agreed to pay the Kuhlmans $6,000 a month for the option to purchase until the option was exercised in writing. The monthly payments were to be credited towards the purchase price. The purchase price was $400,000. The property was to be more specifically described in a legal description to be supplied by Weatherspoon with the Kuhlman's approval. The agreement stated that upon exercise of the option, Weatherspoon was to construct a bar/nightclub on the property to be jointly owned by Weatherspoon and the Kuhlmans. The agreement further provided that if Weatherspoon failed to exercise his option to purchase in a manner prescribed in the agreement, the Kuhlmans would be entitled to keep $2,000 of Weatherspoon's monthly payments but return $4,000 of the monthly payments when the property was sold or transferred to any entity other than Weatherspoon.
 {¶ 3} On February 4, 2003, Weatherspoon filed a complaint for damages and specific performance in the Ottawa County Court of Common Pleas wherein he claimed that the Kuhlmans breached the option to purchase agreement. Weatherspoon sought pre-judgment attachment of the Kuhlmans' funds and property equal to $72,000, specific performance for the sale of the property and, alternatively, expectancy damages, compensatory damages of lost revenue, project costs of $6,098,000 and $10 million in punitive damages.
 {¶ 4} According to the complaint, Weatherspoon executed his option to purchase by a writing transmitted to the Kuhlmans on August 21, 2002. The Kuhlmans, however, refused to complete the transaction unless further negotiations took place regarding the bar/nightclub which both parties were planning on operating together.
 {¶ 5} On November 20, 2002, Weatherspoon informed the Kuhlmans that he was ready, willing and able to close on the property after November 26, 2002. The Kuhlmans responded by informing Weatherspoon they did not intend to go through with a closing after November 26, 2002. They further informed Weatherspoon that they were unable to present a deed into escrow before December 31, 2002, because of county staffing and holiday schedules.
 {¶ 6} On January 24, 2003, Weatherspoon again informed the Kuhlmans he was ready to close on the property and he requested they place a good warranty deed into escrow. On January 30, 2003, the Kuhlmans informed Weatherspoon that they were not in a position to close because terms were not finalized and there was no deed in escrow. The Kuhlmans then demanded removal of any bar/nightclub reference in the closing document. They further disputed the allocation of closing costs. Weatherspoon agreed to remove the bar/nightclub references from the closing document and agreed to pay for all closing costs provided the transaction was completed no later than January 31, 2003. According to Weatherspoon's complaint, the Kuhlmans still failed to place a good warranty deed into escrow for closing.
 {¶ 7} The Kuhlmans filed an answer and a counterclaim. In their answer, the Kuhlmans essentially blamed their failure to close on the fact that Weatherspoon never provided them with a legal description of the property as required in their option to purchase agreement. They counterclaimed for fraud and breach of contract. Specifically, they alleged that Weatherspoon attempted to fraudulently induce them to sell him more of their land and they claimed that Weatherspoon breached the contract by failing to make all of the required lease payments, specifically payments for November 2002 and January 2003. The Kuhlman's sought $18,000 in compensatory damages, $20,000,000 in punitive damages and attorney fees.
 {¶ 8} A trial commenced on June 6, 2005. On October 14, 2005, the trial court issued findings of fact and conclusions of law in favor of the Kuhlmans on their claims of fraud and breach of contract. The court awarded the Kuhlmans $868,602.21 in compensatory damages and $2,000,000 in punitive damages. Weatherspoon now appeals setting forth the following assignments of error:
 {¶ 9} "I. The judgment is against the manifest weight of the evidence and is insufficient as a matter of law."
 {¶ 10} "II. The trial court lacked jurisdiction to grant a judgment based on the filing of the affidavit of facts as it relates to title."
 {¶ 11} "III. The trial court erred in awarding and computing damages."
 {¶ 12} "IV. The court erred in finding for appellees and against appellant on appellant's breach of contract, specific performance and fraud claim."
 {¶ 13} "V. The trial court's verdict was excessive and was the result of `passion and prejudice' and a new trial should be granted."
 {¶ 14} Weatherspoon's first and fourth assignments of error will be addressed together. In both assignments of error Weatherspoon contends the court's judgment is against the manifest weight of the evidence. Our standard of review on manifest weight of the evidence issues in a civil case is whether the record contains some competent, credible evidence in support of the trial court's decision. C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus. When reviewing whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trier of fact were correct. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 79-80. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id.
 {¶ 15} Weatherspoon first contends he did not defraud the Kuhlmans. The essence of the Kuhlmans' fraud claim is that Weatherspoon always intended to purchase five acres of their land rather than three acres. Knowing they were unwilling to sell him more of their land, the Kuhlmans alleged that Weatherspoon attempted to coerce them into selling more land by threatening false tax consequences, clouding the title through the use of an overly broad "affidavit of facts relating to title" and by filing this lawsuit for purposes of scaring off other prospective purchasers.
 {¶ 16} An action for fraud consists of six elements: "a representation of a fact related to the present or past, which is material, made falsely-either with knowledge of its falsity or utter disregard and recklessness as to falsity-with an intent to mislead, with justifiable reliance thereupon, and a resulting injury." Tokles Son, Inc. v. Midwestern Indem. Co. (1992),65 Ohio St.3d 621, 632.
 {¶ 17} Our review of the record in this case shows that there is some competent, credible evidence to support the trial court's finding of fraud on the part of Weatherspoon. The Kuhlmans testified that Weatherspoon repeatedly attempted to purchase more of their land. Despite only contracting to buy three acres of the approximate nine acres owned by the Kuhlmans, in May 2002, Weatherspoon was openly marketing his project as being on 4.6 acres of land. Plaintiff's exhibit BB shows that Weatherspoon had an appraisal done for 4.6 acres of the Kuhlmans' land where he planned to build a resort hotel called The Eclipse. The executive summary portion of the appraisal states: "The Eclipse will be developed on a 4.6 acre parcel of land * * *." A 2002 Gazette newspaper article described the luxury resort complex that Weatherspoon was planning to build on his 4.6 acres of land. Surveyor Mike Prosser testified that in 2002, Weatherspoon told him to draw up plans for a hotel and swimming pool on 4.6 acres of land. We find this evidence supports the trial court's conclusion that Weatherspoon never intended on settling for three acres of the Kuhlmans' land.
 {¶ 18} Weatherspoon next contends there was no evidence he breached his contract with the Kuhlmans and thus, he was entitled to specific performance. The contract described the land at issue as follows:
 {¶ 19} "Situated in the Township of Put-in Bay of South Bass Island, County of Ottawa, State of Ohio and presently owned by Landowners bordering on Put-in Bay Road and Meechen Road, (on the corner directly across the street from the current Put-in Bay airport) shown as parts of parcels 47A-Y and 19A and consisting of 3.0 acres (of a ten acre parcel), currently zoned `commercial' to be more specifically described in a legal description to be supplied by Optionee with Landowner's approval."
 {¶ 20} The Kuhlmans alleged that Weatherspoon breached the contract by failing to provide them with a legal description of the property and by failing to make two lease payments.
 {¶ 21} A contract is a promise or a set of promises, the breach of which the law provides a remedy. Cleveland BuildersSupply Co. v. Farmers Ins. Group of Cos. (1995),102 Ohio App.3d 708, 712. A plaintiff must present evidence on several elements to successfully prosecute a breach of contract claim. Doner v.Snapp (1994), 98 Ohio App.3d 597, 600. The elements are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. Id. The Ohio Supreme Court has held that contracts should be construed so as to give effect to the intention of the parties. Skivolocki v.East Ohio Gas Co. (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, paragraph one of the syllabus.
 {¶ 22} In the present case, Weatherspoon testified that he never provided the Kuhlmans with a legal description of the property subject to their approval. He contends that doing so would have been a futile act as the Kuhlmans had their own legal description of the property in their possession. Nonetheless, appellant's own testimony that he failed to fulfill a condition precedent to a contract he drafted is competent, credible evidence supporting the trial court's determination that Weatherspoon breached the contract. Moreover, Weatherspoon, in his brief, acknowledges that he failed to make all of the required installment payments. Appellant's first and fourth assignments of error are found not well-taken.
 {¶ 23} Weatherspoon's second assignment of error concerns the "affidavit on facts relating to title pursuant to O.R.C. 5301.252" filed by Weatherspoon on August 22, 2003, after he had filed suit against the Kuhlmans. In the affidavit, Weatherspoon states that he timely exercised his option to purchase the property on August 15, 2002. He further states that he placed sufficient funds into escrow before closing was to occur on or before January 31, 2003, but the parties never closed. He further stated:
 {¶ 24} "I filed a lawsuit in Ottawa County Common Pleas Court, case #03-CVH0-35 against Lester and Judith Kuhlman relating to the real property described herein claiming breach of contract, fraud and conversion of pre-paid funds and seeking specific performance, injunctive relief and damages claiming Lester and Judith Kuhlman breached their agreement with affiant and committed fraud by their failure to transmit a good and valid deed to the subject property into closing on or before January 31, 2003."
 {¶ 25} "* * *
 {¶ 26} "As a result of my agreement set forth herein I claim a legal and ownership interest in the above described real property * * *"
 {¶ 27} The trial court labeled the affidavit "overly broad" and found that Weatherspoon's action in filing the "affidavit on facts relating to title pursuant to O.R.C. 5301.252" was an intentional, willful, wanton and malicious act with the sole purpose of clouding the title and preventing the Kuhlmans from selling their property freely all while Weatherspoon knew he had defaulted on his own contract.
 {¶ 28} Weatherspoon contends that the court lacked jurisdiction to consider the affidavit in that it was filed after Weatherspoon's complaint and after the Kuhlmans' answer and counterclaim. Weatherspoon contends that any complaints regarding the affidavit should have been brought forth as a separate cause of action.
 {¶ 29} Civ .R. 15(B) provides, in pertinent part:
 {¶ 30} "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. The standard for appellate review of Civ.R. 15(B) matters is abuse of discretion. Spisak v. McDole (1984), 15 Ohio St.3d 62. An abuse of discretion implies an attitude of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. Staff notes to Civ.R. 15(B) provide that "[i]f the opposing party does not raise an objection to the introduction of evidence outside of the pleadings and continues on the merits, the evidence is treated as if it had been raised by the pleadings whether the pleadings are amended to include such evidence or not."
 {¶ 31} In the instant case, Weatherspoon did not object to the admission of the affidavit into evidence or to any trial testimony regarding the affidavit. Accordingly, the trial court did not abuse its discretion in considering the affidavit and Weatherspoon's second assignment of error is found not well-taken.
 {¶ 32} In his third assignment of error, Weatherspoon contends the court erred in its computation of damages. The trial court awarded compensatory damages in the amount of "$920,602.21. The court found that the Kuhlmans were entitled to $900,000 in damages "for loss of fair market value from sale of land due to [Weatherspoon's] cloud on the title * * *"
 {¶ 33} The record shows that following Weatherspoon's breach of the contract, the Kuhlmans faced serious financial difficulties including foreclosure and bankruptcy. They attempted to sell the land at issue in this case as well as the remaining acreage to no avail once prospective buyers became aware of the lawsuit filed by Weatherspoon. Finally, on August 1, 2004, the Kuhlmans successfully sold their entire parcel of land, including the three acres at issue in this case, for $500,000.
 {¶ 34} The trial court determined the fair market value of the entire parcel of real estate owned by the Kuhlmans to be $1,400,000. The trial court based this determination on the fact that Weatherspoon entered into an offer to purchase the same real estate with the new owner in October 2004 for the sum of $1,400,000.
 {¶ 35} The trial court determined that the sale price of $500,000 was well below the market value of the property based on the following facts:
(1) Weatherspoon initially offered $400,000 for 3 acres of the property,
(2) another buyer had offered the Kuhlmans $750,000 for the remaining acreage, only withdrawing the offer after learning of Weatherspoon's lawsuit,
(3) in a November 20, 2002 letter, Weatherspoon offered the Kuhlmans $1,300,000 for their entire parcel of land, and
(4) in a May 4, 2004 letter, Weatherspoon offered the Kuhlmans $1,372,000 for the property.
 {¶ 36} The trial court arrived at the $900,000 compensatory damage figure by subtracting the sale price of $500,000 from the fair market value price of $1,400,000. The court added $6,309.61 in attorney fees paid to the Huntington Bank as a result of the foreclosure action, $10,292 for lawyer fees the Kuhlmans had already paid in defending this action and $6,000 in attorney fees they currently owed their attorney in defending this action. Finally, the court added in $4,000 in rent Weatherspoon owed for the months of November 2002 and January 2003.
 {¶ 37} While we find there is some competent, credible evidence to support these figures, there appears to have been a mathematical error in the final compensatory damage figure. The trial court's conclusions of law states that the above figures added together result in $920,602.21 in compensatory damages. Our calculations show that the judgment should reflect an amount of $926,601.61. Accordingly, Weatherspoon's third assignment of error is found well-taken.
 {¶ 38} In his fifth assignment of error, Weatherspoon contends that the court's judgment against him was not rooted in the law but rather was based on the influence of passion and prejudice evidenced by the damages awarded to appellees. While this is normally an argument more suited to a jury verdict, we note that the judges findings' in this case which potentially involved a million dollar real estate investment were amply supported by documentation and testimony submitted by both parties. There is no doubt that the trial judge in this case found Weatherspoon's credibility suspect when he stated:
 {¶ 39} "Weatherspoon's] believability was ravaged by constant hedging, inconsistencies and out right falsehoods. The Court is not in a position to repose confidence in a single thing to which [Weatherspoon] testified herein."
 {¶ 40} Such credibility determinations, however, remain within the province of the fact finder. State v. DeHass (1967),10 Ohio St.2d 230. Weatherspoon's fifth assignment of error is found not well-taken.
 {¶ 41} On consideration whereof, we find that substantial justice was not done the party complaining and the judgment of the Ottawa County Court of Common Pleas is affirmed, in part, and reversed, in part. The matter is remanded to the trial court for recalculation of damages consistent with this decision. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Singer, P.J. Parish, J. Concur.